ANGELA WHITFIELD, Employee, Plaintiff-Appellee and Cross-Appellant v. LABO-
RATORY CORPORATION OF AMERICA, Employer, and HARTFORD-ITT SPE-
CIALTY RISK SERVICES, Carrier, Defendants-Appellants and Cross-Appellees

No. COA02-722

(Filed 17 June 2003)

## 1. Workers' Compensation— consideration of all evidence— determination of weight

The Industrial Commission did not disregard medical records in a workers' compensation case, as defends contended, where there were numerous findings regarding plaintiff's visits to care providers who produced the records. The Commission, as it was entitled to do, gave greater weight to the opinion of an anesthesiologist who was a pain management specialist and who had treated plaintiff longer than the other doctors.

## 2. Workers' Compensation— rules—contradicted by Commission—no prejudice

If the Industrial Commission makes rules, it should consider those rules in making its decisions. The Commission noted in this case that certain doctors were not deposed and that only their treatment records were in evidence, which contradicts Workers' Compensation Rule 12. However, the commission used other, appropriate bases for giving weight to the deposition of another doctor.

## 3. Workers' Compensation— back pain—causation—conclusion supported by findings and evidence

The Industrial Commission's conclusion that plaintiff had shown a causal relationship between her fall and her symptoms in a workers' compensation case was supported by the findings and the evidence. Although there was evidence to the contrary, an anesthesiologist who examined plaintiff several times over a year and a half testified that it was "likely" that plaintiff's fall caused her pain. His testimony, and the Commission's finding, focused on the probability rather than the possibility of causation.

## 4. Workers' Compensation— compensable injury—sufficiency of evidence

The Industrial Commission's finding in a workers' compensation case that plaintiff's injury was compensable was sup-

WHITFIELD v. LABORATORY CORP. OF AM.

[158 N.C. App. 341 (2003)]

ported by sufficient competent evidence. Defendant's argument that plaintiff's evidence about her back was not credible was in essence an argument that the Commission should be reversed based on disputed testimony. This the Court of Appeals cannot do.

**5. Workers' Compensation— return to work—not refused— sufficiency of evidence**

The Industrial Commission did not err in a workers' compensation case in its determination that plaintiff did not refuse to return to work where competent evidence supports findings that plaintiff was told by her employer that calling in every day until she was able to return to work was suitable, and that she did not learn that she was to be fired for staying home until her second day back after her recovery.

**6. Workers' Compensation— diminished earning capacity— sufficiency of evidence**

The evidence supported an Industrial Commission finding of diminished earning capacity where plaintiff presented check stubs from her new job and a summary of earnings in relation to the stipulated amount from her job with defendant.

**7. Workers' Compensation— refusal of suitable employment—sufficiency of evidence**

The Industrial Commission's refusal to find that a workers' compensation plaintiff refused suitable employment was supported by competent evidence. After a back injury, ongoing treatment, and attempts to return to work, plaintiff called in daily and was told that there would be no problem as long as she reported her status each day, plaintiff attempted to return to work once more and suffered pain, and the next day she was told that she was being discharged for missing work the previous week.

**8. Workers' Compensation— medical expenses—past and future**

The Industrial Commission correctly ruled that a workers' compensation plaintiff should receive future medical expenses from defendants, but incorrectly approved past expenses. There were findings supported by competent evidence that the recommended future treatment was reasonably necessary to provide relief, and that the doctor approved by the commission as the primary treating physician was qualified to provide that treatment.

However, there was no evidence in the record that plaintiff sought approval for treatment by that doctor (before or after treatment) prior to the Commission's order and award. The case was remanded for findings as to whether plaintiff made that request.

**9. Workers' Compensation— attorney fees—failure to address request**

The failure of the Industrial Commission to address a request for attorney fees from a workers' compensation plaintiff was error.

**10. Workers' Compensation— attorney fees—appeal**

A request for attorney fees for an appeal by a workers' compensation plaintiff met the requirements of N.C.G.S. § 97-88 and was an appropriate case for the exercise of the court's discretion. The insurer had been ordered to pay benefits to the employee and brought the appeal. A request for attorney fees under this statute does not require a lack of reasonable grounds.

Appeal by defendants and cross-appeal by plaintiff from an opinion and award entered 18 January 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 January 2003.

*Edelstein & Payne, by M. Travis Payne, for plaintiff.*

*Smith Moore LLP, by Jeri L. Whitfield and Shannon J. Adcock, for defendants.*

McGEE, Judge.

Laboratory Corporation of America (employer) and Hartford-ITT Specialty Risk Services (collectively defendants) appeal from an opinion and award of the North Carolina Industrial Commission (the Commission) entered 18 January 2002 granting Angela Whitfield (plaintiff) additional disability benefits, along with past and future medical expenses for injuries plaintiff sustained in a slip and fall accident in her employment with Laboratory Corporation of America. Plaintiff filed a cross-appeal dated 20 February 2002 as to the Commission's denial of her request for attorney's fees for defendants' failure to provide plaintiff reasonable and necessary medical treatment.

A deputy commissioner entered an opinion and award on 31 July 2000 concluding that plaintiff was (1) not entitled to any further tem-

porary total disability compensation beyond what she had received because plaintiff had failed to show she had sustained a compensable injury; (2) that plaintiff was able to return to work; and (3) that plaintiff's evidence concerning her back injury was not credible. Plaintiff appealed to the Full Commission. The Commission reversed the deputy commissioner's award on 18 January 2002, finding plaintiff was entitled to additional disability benefits, as well as past and future medical expenses. The Commission's opinion and award did not address plaintiff's request for attorney's fees under N.C. Gen. Stat. § 97-88.1.

Plaintiff worked for employer as a service representative, traveling to medical offices in Raleigh to pick up patient specimens for analysis. The specimens were placed in a cooler in the trunk of a car provided by employer. When plaintiff completed her route, she carried the cooler from the car into the offices of employer and labeled and packaged the specimens to be sent to a laboratory. Plaintiff had to stand for about two hours during the labeling and packaging at the end of the shift.

On 5 June 1998, plaintiff entered a building to make a pickup. As she entered the front door of the building, there was rainwater on the floor and plaintiff's legs slipped out from under her. She began to fall and twisted around abruptly to maintain her balance. She was able to grab onto the door with her left hand as she was falling backwards. She did not quite fall to the floor, as she was able to hold onto the door, but she ended up supporting most of her body weight with her left hand and arm.

Plaintiff almost immediately began experiencing a tingling sensation and pain in her back. As this pickup was near the end of her route, she was able to complete the route that day. Plaintiff rested over the weekend and returned to work on Monday. She reported her injuries to her supervisor and said she was in considerable pain and needed to see a doctor. Plaintiff's supervisor told her to call for an appointment and plaintiff saw Dr. Nichols the following day.

Dr. Nichols took plaintiff out of work until 17 June 1998 and gave her limitations of no lifting and minimal bending. Plaintiff attempted to work on June 17 and 18 but was experiencing so much pain in her back and neck that she returned to Dr. Nichols on June 19, and he again took her out of work.

Dr. Nichols sent plaintiff to Oren LeBlang for physical therapy, but plaintiff was in so much pain that the therapy did not

prove beneficial and it was terminated after about three visits. LeBlang wrote a letter stating that plaintiff complained of pain with "feather like stroking." Plaintiff testified that she clearly remembered the incident and that LeBlang "was mashing very hard on my back."

On 15 July 1998, Dr. Nichols released plaintiff to return to work in a sedentary position, lifting no more than ten pounds. When employer was provided with Dr. Nichols' restrictions, plaintiff was assigned to driving a full route, which aggravated her condition. On July 16 and 17, plaintiff's job was changed and she was allowed to remain in the office doing data entry for three hours. Plaintiff's supervisor testified that even when plaintiff was performing the data entry tasks, she appeared to be in significant pain. She was later assigned to a route with another employee. The route she was assigned was more hectic than the one she had previously done. The new route required plaintiff to move more quickly and also required going up and down more stairs. At the end of the day, plaintiff experienced significantly increased levels of pain.

Plaintiff drove from her home in Goldsboro to work in Raleigh on 20 July 1998. When she arrived at work, she told her supervisor that she was experiencing significant pain and spasms in her back, and requested to again see Dr. Nichols. When she could not get an appointment with Dr. Nichols, plaintiff requested to be allowed to go to a hospital emergency room to get some medication for her pain. She was refused permission to go to the emergency room, but employer located a doctor in Durham, Dr. Christian J. Lambertsen, that plaintiff could see that day. Plaintiff traveled to Durham and first saw Dr. Henry Adomonis, who conduced almost a full examination. Dr. Lambertsen came into the room and repeated the examination. Plaintiff's pain limited her ability to comply with all of the examination requests of the doctor. Dr. Lambertsen placed plaintiff on limited duty with no driving for three weeks. Plaintiff was in so much pain that she was barely able to walk and was unable to drive herself home to Goldsboro. She called and arranged to have a friend pick her up.

Over the next several days plaintiff, or someone on her behalf, called employer early each morning, informing them that plaintiff continued to be in a great deal of pain and could not work. Plaintiff was informed by her supervisor that as long as she called in and reported her status each day there would be no problem.

Plaintiff was informed on 21 July 1998 by a nurse working for employer that she would no longer be able to see Dr. Nichols. Two days later, plaintiff continued to experience severe pain and went on her own to a hospital emergency room in Greenville for treatment. Plaintiff drove to Raleigh and reported for work at her normal time on Friday, 24 July 1998. She was informed that she should return home and come back on Monday, 27 July 1998 to talk to with her supervisor, who was not at work that day. Plaintiff reported to work on July 27 and was informed by her supervisor that she had been discharged for not coming to work during the previous week.

On the afternoon of July 27, plaintiff kept an appointment with Dr. Scott Sanitate that had been arranged by defendants. Plaintiff's friend accompanied her to the appointment and went into the examination room with her. Plaintiff was still in significant pain and was dragging her right leg to a significant extent. Dr. Sanitate did a minimal evaluation and indicated to plaintiff that he thought all of her problems would resolve with no surgical intervention and with minimal treatment. He recommended a steroidal injection, which was scheduled for 4 August 1998.

Plaintiff was unable to attend the scheduled appointment for the injection because she had started other employment. She asked that the appointment be rescheduled, but defendants did not reschedule it. After 27 July 1998, defendants never provided plaintiff any type of medical treatment.

Plaintiff continued to experience severe levels of pain in her neck, back, shoulder and leg. She was unable to sit for long periods, unable to stand for significant periods, and unable to walk any significant distances. These were activities that she did regularly before her injury. Plaintiff also experienced difficulty in doing routine chores such as cleaning her house.

Plaintiff began to see Dr. Huh, at the Duke Hospital Pain Clinic in October 1998. Because of her limited financial resources and lack of health insurance, plaintiff was unable to see Dr. Huh as frequently as recommended. She was also financially unable to purchase all of the medications he prescribed or obtain the diagnostic tests he prescribed, such as cervical and lumbar MRI's.

Dr. Huh, a board certified anesthesiologist and board eligible pain management specialist, stated that plaintiff was experiencing real and significant levels of pain in her neck, back, and leg and that she

was not exaggerating her level of pain during the period he treated plaintiff. Based on a description of the slip and fall that plaintiff experienced on 5 June 1998, it was Dr. Huh's opinion that the types of problems he diagnosed for plaintiff were likely to have arisen from such a twisting fall.

Dr. Huh testified that plaintiff developed significant depression secondary to her chronic pain. He further opined that this was not unusual and that a doctor needed to treat the depression as well as the pain in order for a patient to obtain significant pain relief.

Dr. Huh also stated that plaintiff's inability to attend regular and scheduled appointments, due to her financial situation, negatively affected her treatment and possibilities for recovery; but her prognosis for a significant recovery was fair provided she was able to attend regularly scheduled medical visits at the pain clinic, receive all of the medication prescribed, attend regular psychotherapy sessions, and attend a regular, long-term physical therapy program. Dr. Huh testified that plaintiff was not capable and had not been capable of performing a job that required her to sit in a car and drive the vehicle for approximately four hours out of an eight hour shift due to the pain and difficulties that she experienced.

Following her discharge by employer, plaintiff was able to obtain employment driving a bus on a part-time basis. Driving the bus caused plaintiff considerable pain.

Defendants paid plaintiff temporary disability benefits during the periods she was unable to work from 9 June 1998 to 16 June 1998, and from 19 June 1998 to 15 July 1998. They have paid plaintiff no benefits since 20 July 1998. Defendants have provided plaintiff with no medical treatment since her appointment with Dr. Sanitate on 27 July 1998.

Defendants have failed to present an argument in support of assignments of error 10, 11, 15, and 18 and those assignments are deemed abandoned. N.C.R. App. P. 28(b)(6).

"The standard of appellate review of an opinion and award of the Industrial Commission in a workers' compensation case is whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law." *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997). The Industrial Commission's findings of fact "are conclusive on

appeal when supported by competent evidence . . . even [if] there is evidence to support a contrary finding[,]" *Morrison v. Burlington Industries*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and "may be set aside on appeal [only] when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000).

> "Whether the full Commission conducts a hearing or reviews a cold record, N.C.G.S. § 97-85 places the ultimate fact-finding function with the Commission[.]" *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413 (1998). Where "defendants' interpretation of the evidence is not the only reasonable interpretation[, it] is for the Commission to determine the credibility of the witnesses, the weight to be given the evidence, and the inferences to be drawn from it. As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal." *Rackley v. Coastal Painting*, [153] N.C. App. [469], [472], 570 S.E.2d 121, 124 (2002) (citation omitted). Therefore, "appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (citing *Adams*, 349 N.C. at 681, 509 S.E.2d at 413). However, the Industrial Commission's conclusions of law are reviewable *de novo*. *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 468 S.E.2d 269 (1996).

*Johnson v. Herbie's Place*, 157 N.C. App. 168, 171, 579 S.E.2d 110, 113 (2003).

## I.

[1] Defendants first argue that the Commission erred by wholly disregarding the stipulated medical records of Doctors Nichols, Lambertsen, Sanitate, and Adomonis, as well as the records of plaintiff's physical therapist, Oren LeBlang, which defendants argue show that plaintiff was not disabled and was able to return to work without restrictions. Defendants argue that the Commission based its decision solely on the deposition testimony of Dr. Huh.

It is reversible error for the Commission to fail to consider the testimony or records of a treating physician. *Jenkins v. Easco Aluminum Corp.*, 142 N.C. App. 71, 78, 541 S.E.2d 510, 515 (2001)

(the Commission "may not wholly disregard competent evidence"); *Lineback*, 126 N.C. App. at 680, 486 S.E.2d at 254. However, the record reveals that the Commission did not wholly disregard the medical notes of Doctors Nichols, Lambertsen, Sanitate, and Adomonis and the records of Oren LeBlang. The Commission made numerous findings concerning plaintiff's visits to these doctors and to the physical therapist. The Commission simply accorded greater weight to the opinion of Dr. Huh, as it is entitled to do. *See Rackley*, 153 N.C. App. at 472, 570 S.E.2d at 124 (citation omitted).

One reason stated by the Commission for giving greater weight to the opinion of Dr. Huh was that Dr. Huh was "more qualified by training to assess chronic pain." Another reason stated by the Commission was that Dr. Huh treated plaintiff for a longer period of time than the other doctors. Both of these reasons are supported by the evidence. The evidence showed that Dr. Huh is a board certified anesthesiologist and board eligible pain management specialist. He is an Associate in Anesthesiology at the Duke Hospital Pain Clinic, he graduated from medical school, and he served four years of residency and a fellowship in pain management at the University of North Carolina at Chapel Hill. In addition, there is competent evidence that Dr. Huh treated plaintiff during a period of more than a year and a half, as opposed to the minimal appointments plaintiff had with the other doctors and the physical therapist. The evidence in the record supports the Commission's findings.

[2] We note that the statement by the Commission that Doctors Nichols, Lambertsen, Sanitate, and Adomonis were "not deposed; [and that] only their treatment records [were] in evidence" is somewhat contradictory to North Carolina Workers' Compensation Rule 612. This rule encourages parties to stipulate medical records into evidence, as opposed to taking multiple depositions, by allowing assessment of the costs of a deposition of a medical witness, including attorney's fees, against the party who refuses to stipulate to medical records. *Hawley v. Wayne Dale Constr.*, 146 N.C. App. 423, 428-29, 552 S.E.2d 269, 273, *disc. review denied*, 355 N.C. 211, 558 S.E.2d 868 (2001). However, this rule does not prohibit a party from taking depositions if the party believes a deposition will be more useful than stipulated medical records of a medical witness. "The Commission may make rules, not inconsistent with this Article [the North Carolina Workers' Compensation Act], for carrying out the provisions of this Article." N.C. Gen. Stat. § 97-80(a) (2001). If the Commission makes rules, it should consider those rules in making its

decisions. In the present case, the Commission's findings show that it considered the medical records of Doctors Nichols, Lambertsen, Sanitate, and Adomonis and the reports of Oren LeBlang, along with the deposition of Dr. Huh. The Commission then gave more weight to the deposition of Dr. Huh because of Dr. Huh's training and experience and the fact that Dr. Huh treated plaintiff for an extended period of time, both appropriate bases to accord greater weight to Dr. Huh's deposition. This argument is overruled.

II.

[3] Defendants also argue that the Commission erred in its conclusion that plaintiff had proven a causal relationship between plaintiff's alleged symptoms and any compensable incident at work. As stated above, when reviewing the Commission's conclusions of law we must determine whether the findings of fact support the conclusions of law. However we review conclusions of law by the Commission *de novo*. *Hawley*, 146 N.C. App. at 427, 272 S.E.2d at 272.

The plaintiff in a workers' compensation case bears the burden of initially proving each and every element of compensability, including causation. *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 28, 514 S.E.2d 517, 521 (1999). " '[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.' " *Demery v. Converse, Inc.*, 138 N.C. App. 243, 248, 530 S.E.2d 871, 875 (2000) (quoting *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)). "To establish the necessary causal relationship for the injury to be compensable under the Act, 'the evidence must be such as to take the case out of the realm of conjecture and remote possibility.' " *Id.* (quoting *Gilmore v. Board of Education*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)).

The Commission found that:

27. Based on a description of the slip and fall that plaintiff experienced on June 5, 1998, Dr. Huh was of the opinion and the Full Commission finds that the types of problems he diagnosed for plaintiff were likely to have arisen from such a twisting fall.

This finding, if supported by the evidence, is sufficient to support the Commission's conclusion that plaintiff had shown a causal relationship between plaintiff's symptoms and the compensable accident that

occurred on 5 June 1998. Such a finding takes the causal relationship out of the "realm of conjecture and remote possibility" as required. *Id.* We acknowledge that the "mere possibility of causation," as opposed to the "probability" of causation, is insufficient to support a finding of compensability. *Swink v. Cone Mills, Inc.*, 65 N.C. App. 397, 398, 309 S.E.2d 272, 271 (1983). However, this finding of fact speaks to the "probability," not the "possibility," of causation, and thus will support the conclusion of compensability if the finding of fact is supported by the evidence in the record. *See id.*

Dr. Huh testified in his deposition that, not only is it "possible," but that it is "likely" that plaintiff's near fall is the cause of her current pain. Dr. Huh also testified that he could say with a degree of "substantial certainty" that the fall on 5 June 1998 was the cause of plaintiff's back pain. Defendants argue that Dr. Huh had no basis for his opinion and his testimony was therefore inadmissible under (1) *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590, 125 L. Ed. 2d 469, 481 (1993), because it was not "ground[ed] in the methods and procedures of science," and (2) under *Young*, 353 N.C. at 230, 538 S.E.2d at 915, because his testimony was entirely based on "mere speculation or possibility." Dr. Huh examined plaintiff several times over the period of more than a year and a half, he knew about the fall that occurred on 5 June 1998, and he diagnosed the injuries of which plaintiff complains. As we have already stated, Dr. Huh's deposition testimony is not speculative and it focuses on the probability, not simply the possibility, that the fall on 5 June 1998 caused plaintiff's injuries. Dr. Huh's testimony as to causation was competent and could be considered by the Commission.

"The Commission's findings will not be disturbed on appeal if they are supported by competent evidence even if there is contrary evidence in the record." *Hawley*, 146 N.C. App. at 427, 552 S.E.2d at 272 (citing *Deese*, 352 N.C. 109, 530 S.E.2d 549 (2000) and *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432, 342 S.E.2d 798, 803 (1986)). Although there is contrary evidence in the record, we find that Dr. Huh's testimony was competent evidence to support the Commission's findings and its conclusion that plaintiff had shown a causal relationship between the fall on 5 June 1998 and the symptoms for which plaintiff seeks recovery. This argument is overruled.

### III.

[4] Defendants next argue that the Commission erred in finding that plaintiff was entitled to temporary total disability benefits. A plaintiff

in a workers' compensation case has the burden of showing the injury complained of resulted from an accident arising out of and in the course and scope of her employment. *Henry v. Leather Co.*, 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950); *Smith v. Cotton Mills, Inc.*, 31 N.C. App. 687, 690, 230 S.E.2d 772, 774 (1976). With respect to a back injury, a plaintiff may show that the injury is the result of an accident, or that the alleged injury is the direct result of a specific traumatic incident of the work assigned. *Richards v. Town of Valdese*, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989). Defendants argue that plaintiff failed to carry her burden of proof.

Defendants basically contend that the deputy commissioner correctly determined that plaintiff's evidence concerning her back injury was not credible. Defendants argue that testimony by the four authorized physicians and a physical therapist, all opining that plaintiff was malingering, was the only credible evidence as to plaintiff's injuries, and the Commission erred in reversing the deputy commissioner.

Plaintiff presented medical evidence in the form of deposition testimony by Dr. Huh. Plaintiff also testified as to the injury to her lower back. Defendants argue that this evidence was entitled to no weight. As stated above,

[w]here "defendants' interpretation of the evidence is not the only reasonable interpretation[, it] is for the Commission to determine the credibility of the witnesses, the weight to be given the evidence, and the inferences to be drawn from it. As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal."

*Johnson*, 157 N.C. App. at 171, 579 S.E.2d at 113 (quoting *Rackley*, 153 N.C. App. at 472, 570 S.E.2d at 124 (citation omitted)). There is conflicting evidence as to whether the injuries plaintiff complains of resulted from the fall on 5 June 1998. "The Commission's findings will not be disturbed on appeal if they are supported by competent evidence even if there is contrary evidence in the record." *Hawley*, 146 N.C. App. at 427, 552 S.E.2d at 272 (citations omitted). We find that there is sufficient evidence, in the form of deposition testimony of Dr. Huh, whose competence to testify we discussed above, and testimony by plaintiff to support the Commission's finding that plaintiff's injury was compensable. Defendants are essentially asking us to reverse the decision of the Commission on the basis of disputed testimony, which we cannot do. This argument is overruled.

WHITFIELD v. LABORATORY CORP. OF AM.

[158 N.C. App. 341 (2003)]

IV.

[5] Defendants next argue that even if plaintiff can show that she sustained a compensable injury on 5 June 1998, there is no evidence on which to base a finding and conclusion that her injury resulted in any compensable disability. Defendants argue that findings of fact 33 and 34 are not supported by competent evidence in the record, and thus conclusion of law number 2 and paragraph 1 of the award by the Commission are without support.

The challenged findings state as follows:

33. While defendants paid plaintiff some temporary disability benefits during the periods she was unable to work from June 9-June 16, and June 19-July 15, 1998, they have paid her no benefits from the period since July 20, 1998. As a result of her injury, plaintiff was unable to earn wages in any employment from July 20, 1998 through July 31, 1998.

34. As a result of her injury, plaintiff has sustained diminished wage earning capacity. Plaintiff's earning as a part-time bus driver are indicative of her wage earning capacity. Plaintiff has been partially disabled since August 1, 1998.

Defendants argue that no medical evidence indicated that plaintiff was unable to work during the period from 20 July 1998 to 31 July 1998. In fact, defendants argue that plaintiff's treating physician authorized plaintiff to return to work and that plaintiff's "wage loss" was due to her failure to return to work. However, the Commission found that plaintiff, after talking to her supervisor, remained home and either called in or had someone call on her behalf everyday until she was able to return to work with employer. The Commission found that plaintiff was informed by employer that this was a suitable course of action under the circumstances, and that it was not until 27 July 1998, the second day she came to work after this recovery period, that plaintiff learned she was being fired for staying home to recover. These findings were supported by competent evidence in the record, including testimony of employer's branch manager, plaintiff, plaintiff's mother, and plaintiff's friend. The Commission did not err in its determination that plaintiff did not refuse to return to work.

[6] Defendants also argue that plaintiff has not shown any diminished earning capacity since the evidence shows plaintiff earned $5,516.00 in 1997, $9,253.00 in 1998, and $11,790.42 in 1999. However, in paragraph 5 of the pre-trial agreement entered into by the parties,

the parties stipulated that plaintiff's average weekly wage was "at least $280.00." An employee can establish that she is unable to earn the wages she earned at the time of her injury four different ways:

> (1) the production of medical evidence that [she] is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that [she] is capable of some work, but that [she] has, after reasonable effort on [her] part been unsuccessful in her effort to obtain employment; (3) the production of evidence that [she] is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that [she] has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted).

In the present case, plaintiff presented evidence under the fourth option, in the form of check stubs showing her earnings from the job she began on 1 August 1998, as well as a summary of those earnings in relation to the stipulated amount of earnings from plaintiff's job with employer. Thus, there is competent evidence in the record to support the Commission's finding that plaintiff had demonstrated a reduced wage earning capacity under the fourth option. This finding, based on the competent evidence in the record, was a proper basis for the Commission to award plaintiff partial disability benefits. *See Larramore v. Richardson Sports Ltd. Partners*, 141 N.C. App. 250, 259-60, 540 S.E.2d 768, 773 (2000), *aff'd per curiam*, 353 N.C. 520, 546 S.E.2d 87 (2001) (holding that a former professional football player with an $86,000.00 contract who had shown that because of injury he could not play football and had to perform low-paying jobs had presented sufficient evidence of reduced wage earning capacity). The Commission did not err in awarding plaintiff additional temporary total disability benefits from 21 July 1998 through 31 July 1998 and temporary partial disability benefits based on plaintiff's wage differential from 1 August 1998. Defendants' argument is overruled.

V.

[7] Similar to the argument above, defendants contend that the Commission erred in finding that plaintiff was entitled to continuing benefits, because plaintiff unjustifiably refused suitable employment. If an employer meets its burden of showing that a plaintiff unjustifi-

ably refused suitable employment, then the employee is not entitled to any further benefits under N.C. Gen. Stat. §§ 97-29 or 97-30. *Gordon v. City of Durham*, 153 N.C. App. 782, 787, 571 S.E.2d 48, 51 (2002); *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 206, 472 S.E.2d 382, 386, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). Defendants argue that plaintiff's failure to return to work from 21 July 1998 to 23 July 1998 constituted an unjustifiable refusal of suitable employment. As noted in the Commission's findings of fact:

> 12. Over the next several days plaintiff, or someone on her behalf, called defendant-employer early each morning, informing them that plaintiff continued to be in a great deal of pain and could not work. Plaintiff was informed by her supervisor Ms. Howard, that as long as she called in and reported her status each day there would be no problems.
>
> . . .
>
> 15. On Friday, July 24, 1998, plaintiff drove to Raleigh and reported for work at her normal time. She was informed that she should return home, and come back on Monday to talk with Ms. Howard who was not at work that day. Plaintiff provided defendant-employer with a copy of a statement she had received from the emergency room the previous day, establishing that she had been to see a doctor and she continued to have significant limitations.
>
> 16. On Monday, July 27, 1998, plaintiff reported to work and was informed by Ms. Howard that [plaintiff] had been discharged for not coming to work during the previous week. Ms. Howard testified that she did not recommend plaintiff's discharge and did not know who really made that decision. She further indicated that she did not know what the company's attendance policies were.

These findings of fact are supported by the competent evidence in the record: testimony of employer's branch manager, plaintiff, plaintiff's mother, and plaintiff's friend. Defendants' argument that the Commission erred in failing to determine that plaintiff unjustifiably refused suitable employment is without merit.

## VI.

[8] Defendants' final argument is that the Commission erred in ruling that employer is responsible for payment of medical bills that

plaintiff incurred for treatment, where the treatment was not approved by employer.

Employers are required to provide medical compensation when the treatment in question is reasonably required to lessen the period of disability, effect a cure, or give relief. N.C. Gen. Stat. §§ 97-2(18) and 97-25 (2001); *Little v. Penn Ventilator Co.*, 317 N.C. 206, 210, 345 S.E.2d 204, 207 (1986). "[R]elief from pain is a legitimate aspect of the 'relief' anticipated by future medical treatment under N.C. Gen. Stat. § 97-25." *Simon v. Triangle Materials, Inc.*, 106 N.C. App. 39, 44, 415 S.E.2d 105, 108, *disc. review denied*, 332 N.C. 347, 421 S.E.2d 154 (1992).

There is competent evidence in the record that supports the Commission's finding that plaintiff required further medical treatment as a result of her fall on 5 June 1998. Dr. Huh testified that because of plaintiff's limited resources and lack of health insurance, plaintiff was unable (1) to see Dr. Huh as frequently as he recommended, (2) to purchase all of the medications he prescribed, and (3) to obtain diagnostic tests he prescribed, such as cervical and lumbar MRI's. Dr. Huh testified that plaintiff was experiencing real and significant levels of pain in her neck, back, and leg and that she was not exaggerating her level of pain during the period he treated her. Dr. Huh also testified that plaintiff had developed significant depression secondary to her chronic pain and that it was usually necessary to treat the depression as well as the pain in order for such a patient to obtain significant pain relief. He testified that due to plaintiff's financial inability to attend regularly scheduled appointments, plaintiff's possibility for recovery was negatively affected; however, provided plaintiff did everything Dr. Huh recommended, he believed plaintiff's prognosis for recovery was fair. This competent testimony is sufficient to support the Commission's findings that plaintiff required further medical treatment to provide relief. As stated above, employers are required to provide medical treatment when the treatment is reasonably required to lessen the period of disability, effect a cure, or give relief. *Little*, 317 N.C. at 210, 345 S.E.2d at 207.

Defendants argue that plaintiff is not entitled to simply shop around for a physician who will medicate subjective complaints of pain when four employer-chosen physicians were all in agreement that further treatment for plaintiff would be useless. However, this is a credibility issue for the Commission to resolve, and as discussed above, we do not disturb those findings since they are supported by

competent evidence. *See Hawley*, 146 N.C. App. at 427, 552 S.E.2d at 272. N.C.G.S. § 97-25 allows "an injured employee [to] select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission."

The Commission approved Dr. Huh as the primary treating physician for plaintiff for the problems arising from plaintiff's 5 June 1998 injury by accident. The findings of fact indicate that the treatment recommended by Dr. Huh is reasonably necessary to provide relief to plaintiff. Those findings are supported by competent evidence. There are also findings that Dr. Huh is qualified to provide ongoing treatment to plaintiff, which are supported by competent evidence in the record of Dr. Huh's training and experience. Therefore, as to future medical expenses, the Commission did not err in ruling that defendants are responsible for those expenses.

As to the past medical expenses, there is no finding by the Commission that the Commission approved the treatment by Dr. Huh prior to the issuance of the Commission's order and award, or that plaintiff sought such approval from the Commission. The record does not show that any such request was made as required by N.C.G.S. § 97-25. We recognize that such a request need not be made before treatment is received, only within a reasonable time thereafter, *Larramore*, 141 N.C. App. at 258, 540 S.E.2d at 772-73; however, without any evidence of a request in the record, the issue of the timeliness of the request is not before us. We therefore vacate the portion of conclusion number three of the Commission's opinion and award granting past medical benefits for treatment by Dr. Huh and remand this issue to the Commission to make proper findings as to whether plaintiff actually requested approval from the Commission for treatment by Dr. Huh.

VII.

[9] Plaintiff has made two cross-assignments of error. Plaintiff first argues that the Commission erred by failing to find and conclude that defendants were aware that plaintiff was in need of on-going medical treatment arising from her injury, yet failed and refused to provide such treatment. Plaintiff also argues that the Commission erred (1) in failing to conclude that defendants' denial of benefits, particularly needed medical treatment, was unreasonable, and (2) in failing to award plaintiff reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 (2001).

N.C.G.S. § 97-88.1 states that:

> If the Industrial Commission shall determine that any hearing
> has been . . . defended without reasonable ground, it may as-
> sess the whole cost of the proceedings including reasonable
> fees for . . . plaintiff's attorney upon the party who has . . .
> defended them.

The purpose of this statute is "to prevent 'stubborn, unfounded liti-
giousness' which is inharmonious with the primary purpose of the
Workers' Compensation Act to provide compensation to injured
employees." *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767,
768, 394 S.E.2d 191, 192 (1990) (citation omitted). However, the deci-
sion of the Commission to award or deny attorney's fees is reversible
only for an abuse of discretion. *Troutman v. White & Simpson, Inc.*,
121 N.C. App. 48, 54-55, 464 S.E.2d 481, 486 (1995), *disc. review
denied*, 343 N.C. 516, 472 S.E.2d 26 (1996).

Upon review of the record it is evident that the Commission
failed to rule on plaintiff's request for attorney's fees pursuant to
N.C.G.S. § 97-88.1. Our Court recently addressed this same issue and
determined that the failure of the Commission to address plaintiff's
attorney's fee request was in error. *Cialino v. Wal-Mart Stores*, 156
N.C. App. 463, 474, 577 S.E.2d 345, 353 (2003). " 'This Court has held
that when the matter is "appealed" to the full Commission . . ., it is the
duty and responsibility of the full Commission to decide all of the
matters in controversy between the parties.' " *Id.* (quoting *Vieregge v.
N.C. State University*, 105 N.C. App. 633, 638, 414 S.E.2d 771, 774
(1992)). We must therefore remand this issue to the Commission
for determination.

VIII.

[10] Plaintiff also requests that defendants be ordered to pay plain-
tiff's attorney's fees incurred in connection with the present appeal,
pursuant to N.C. Gen. Stat. § 97-88 (2001). Under N.C.G.S. § 97-88 a
reviewing court may award costs of the appeal, including attorney's
fees, to an injured employee "if (1) the insurer has appealed a deci-
sion to the full Commission or to any court, and (2) on appeal, the
Commission or court has ordered the insurer to make, or continue
making, payments of benefits to the employee." *Flores v. Stacy
Penny Masonry Co.*, 134 N.C. App. 452, 459, 518 S.E.2d 200, 205
(1999) (citations omitted). The statutory requirements have been met
in the present case. Unlike N.C.G.S. § 97-88.1, a request for attorney's

fees under N.C.G.S. § 97-88 does not require a determination that a hearing be "brought, prosecuted or defended without reasonable ground" in order to assess the cost of the proceedings upon the party who has defended the proceedings. *Brown v. Public Works Comm.*, 122 N.C. App. 473, 477, 470 S.E.2d 352, 354 (1996). Our determination of this issue is therefore not controlled by the Commission's decision whether to award attorney's fees on remand under N.C.G.S. § 97-88.1 as discussed above.

We note that in the present case, the Commission's award requires plaintiff to pay her attorney "one-fourth of the indemnity compensation awarded to plaintiff," but does not take into account or include expenses related to medical care and treatment in determining the amount plaintiff must pay to her attorney. *See Hyler v. GTE Prod. Co.*, 333 N.C. 258, 264-65, 425 S.E.2d 698, 702-03 (1993) (distinguishing between general "compensation" and "medical compensation" under the Workers' Compensation Act). Our decision does not affect the amount of total indemnity compensation plaintiff will receive under the Commission's award, of which plaintiff's attorney is entitled a one-fourth interest under the terms of the award. Further, many of the assignments of error asserted by defendants focus on the credibility determinations by the full Commission, an area in which, as thoroughly discussed above, this Court is bound by the findings of the Commission if supported by any competent evidence. We find this to be an appropriate case to exercise our discretion and grant plaintiff's request for attorney's fees for the cost of this appeal. *See Brown*, 122 N.C. App. at 477, 470 S.E.2d at 354. We remand this matter to the Commission for a determination of the amount of reasonable attorney's fees owed plaintiff as a result of this appeal.

Affirmed in part and remanded in part.

Judges HUNTER and CALABRIA concur.