***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. This case is subject to the North Carolina Workers' Compensation Act. *Page 2 
2. The parties are subject to the jurisdiction of the North Carolina Industrial Commission.
3. The employment relationship existed between plaintiff and defendant-employer on November 17, 2005.
4. Defendant-employer is insured by Liberty Mutual Insurance Company.
5. Plaintiff's date of birth is June 13, 1969.
6. Plaintiff has been out of work since August 7, 2006.
7. A Form 18 dated December 3, 2005 was filed with the North Carolina Industrial Commission and plaintiff received a confirmation letter from the North Carolina Industrial Commission dated January 19, 2006.
8. A Form 33 dated April 18, 2007 was filed with the North Carolina Industrial Commission.
9. A Form 33R dated June 5, 2007 was filed with the North Carolina Industrial Commission.
10. A Form 61 denying plaintiff's claim was filed on May 30, 2007.
11. Plaintiff's average weekly wage is $246.16.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement and Exhibits as Stated in the Records Index
 (b) Plaintiff's Exhibit 1: Diagram of the Work Site Drawn by Plaintiff
 *********** *Page 3 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 38 years old. He completed high school and obtained a two-year degree from Piedmont Community College. He also completed coursework towards a history degree at The University of North Carolina at Chapel Hill.
2. Plaintiff began working for defendant-employer United Parcel Service in July 2004 as a pre-loader. In this position, plaintiff was required to transfer packages from a belt onto a package cart. Plaintiff normally worked from 3:30 a.m. to 8:30 a.m.
3. On November 17, 2005, plaintiff was instructed to unload a truck of "irregulars" and hoist them onto the conveyor belt. Irregulars are packages that are oddly shaped and of greater weight than the packages ordinarily handled by plaintiff. While performing this work, plaintiff felt a "twinge" in his back, but did not think much about it at the time. Plaintiff went home after work and slept during the day as was his custom. When he awoke, plaintiff felt severe pain in his back.
4. Plaintiff immediately called his doctor, Dr. Raymond J. Toher, Jr. at Durham Medical Center, to schedule an appointment. However, Dr. Toher was unavailable and plaintiff saw his partner, Dr. Ron Fleming, on November 18, 2005. Dr. Fleming wrote plaintiff out of work for one week.
5. After being out of work for one week, plaintiff returned to work and performed his regular work, however his back continued to hurt. *Page 4 
6. In April 2006, plaintiff was shifted to a different position in the line of pre-loaders. Prior to being moved, plaintiff had been loading three trucks. After being moved, plaintiff's work load increased to loading four or five trucks. In April, May, June, and July of 2006, plaintiff began to suffer from increased anxiety and the possibility of paranoia. He lost approximately 20 pounds.
7. On August 7, 2006, plaintiff saw his psychiatrist, Dr. Nathan Jackson, at Caring Family Network. Plaintiff was first diagnosed with schizophrenia in 1992. Dr. Jackson had treated plaintiff for approximatley ten years. At the August 7, 2006 visit, plaintiff reported stress at work, an impossible workload, and worry about losing his job. Plaintiff also reported being observed by management and was worried people were talking about him while he was eating in a restaurant. At the conclusion of this visit, Dr. Jackson concluded that plaintiff was on the verge of a psychotic decompression and/or drinking binge and removed him from work.
8. Dr. Jackson opined that plaintiff's inability to continue working at the time that he was with UPS arose out of the increased workload.
9. Although plaintiff believed his back injury was in conjunction with his increased workload and aggravated his psychological condition for which Dr. Jackson took him out of work, Dr. Jackson declined to draw such a connection.
10. Likewise, Dr. Robert Millet, a psychiatrist at Carolina Behavioral Care who began providing plaintiff's psychological treatment in June 2007, saw plaintiff's schizophrenia and back pain as separate issues and had no opinion regarding a relationship between the two.
11. Based upon the testimony of Dr. Jackson and Dr. Millett, the Full Commission find that plaintiff was removed from work on August 7, 2006 due to his psychological condition which was aggravated by the stress of the increased pace of his work. However, the medical *Page 5 
evidence of record fails to establish a causal connection between plaintiff's back injury on November 17, 2005 and his aggravated psychological condition.
12. Although plaintiff was removed from work on August 7, 2006 due to his psychological condition and remains out of work today due to his psychological condition, he nonetheless injured his back on November 17, 2005 when he felt a twinge in his back while unloading a truck. Based upon the testimony of Dr. Peter W. Gilmer, an orthopaedic surgeon at Triangle Orthopaedic Associates, Dr. Andrew K. Lynch, a physiatrist at Triangle Orthopaedic Associates, and Dr. Toher, plaintiff's primary care physician, the Full Commission finds that plaintiff's ongoing back condition is causally related to his incident at work on November 17, 2005. Other than the one week that plaintiff was taken out of work following his injury, no doctor has indicated that plaintiff should be completely out of work due to his back injury. Rather, plaintiff's treating physicians have indicated that he should be assigned work restrictions for his back injury.
13. Plaintiff is currently treating with Dr. Lynch for his back condition. Dr. Lynch opined that plaintiff's work restrictions for his back would include limiting lifting, bending, and squatting activities, and no lifting more than 20 pounds. Plaintiff would need to limit extension movements, which would include weight over his head and off of the floor. Plaintiff would need to limit twisting activities to an occasional status, which would be less than a third of the day. Plaintiff would also need to have limited prolonged standing or prolonged sitting and would require freedom to change positions several times an hour as needed for his back pain.
14. Plaintiff has not yet reached maximum medical improvement for his back condition. According to Dr. Lynch, plaintiff would continue to benefit from prescription *Page 6 
medications and may benefit from another radiofrequency ablation. At the present time, plaintiff has not been evaluated for a permanent partial impairment rating.
15. Dr. Jackson advised plaintiff to apply for long-term disability benefits due to his psychological condition. However, Dr. Millet, who is currently treating plaintiff for his psychological condition, felt that in terms of his stable schizophrenia, there is no reason he could not return to some form of employment. The record does not contain evidence that plaintiff has ever been released by Dr. Millett to return to work from a psychological perspective, and plaintiff has not engaged in a job search. If plaintiff is released from a psychological perspective to return to work, his job search would be limited by the restrictions for his back condition as stated by Dr. Lynch.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his back as a result of a specific traumatic incident arising out of and in the course of his employment with defendant-employer on November 17, 2005. N.C. Gen. Stat. § 97-2(6).
2. A plaintiff in a workers' compensation case has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and the employment. Whitfield v.Lab. Corp. of Amer., 158 N.C. App. 341, 350, 581 S.E.2d 778, 784
(2003). The greater weight of the evidence of record establishes that plaintiff's ongoing back condition is causally related to his incident at work on November 17, 2005 and is therefore compensable. Booker v. MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979). *Page 7 
3. The medical evidence of record fails to establish a causal relationship between plaintiff's back injury and his aggravated psychological condition, and thus plaintiff's aggravated psychological condition is not compensable. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980). As plaintiff was taken out of work on August 7, 2006, and remains out of work, due to his non-compensable psychological condition, he is not entitled to payment of disability compensation at the present time. Id. If plaintiff is released from a psychological perspective to return to work, and is unable to find suitable employment within his work restrictions for his *Page 8 
compensable back injury after a reasonable job search, then plaintiff would be entitled to request a hearing to establish disability from that point forward if denied by defendants. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable back injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable back injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
2. Plaintiff's claim for disability compensation from August 7, 2006 to the present and continuing is denied. However, if plaintiff is released from a psychological perspective to return to work, and is unable to find suitable employment within his work restrictions for his compensable back injury after a reasonable job search, then plaintiff may request a hearing to establish disability from that point forward if denied by defendants.
3. As plaintiff has not been evaluated for a permanent partial impairment rating to his back, this Opinion and Award does not address this issue. However, if in the future the parties are unable to reach an agreement regarding this issue, either party may request a hearing from the Commission.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from any future disability compensation due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
This the 19th day of May 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1