ULDARICA M. KEETON, Employee, Plaintiff v. CIRCLE K, Employer, CONSTITUTION STATE SERVICE COMPANY, Carrier, Defendants

No. COA11-632

(Filed 6 December 2011)

**1. Workers' Compensation—refusal of suitable employment—findings of fact—conclusions of law**

The Industrial Commission did not err in a workers' compensation case by its findings of fact and conclusions of law regarding refusal of suitable employment. Because the issue of plaintiff's refusal of employment was before both the special deputy commissioner and deputy commissioner, the full Commission properly considered that issue and made relevant findings of fact and conclusions of law.

**2. Workers' Compensation—suitable employment—constructive refusal—voluntariness**

The Industrial Commission did not err in a workers' compensation case by concluding plaintiff's termination was not considered constructive refusal of suitable employment under *Seagraves*, 123 N.C. App. 288. The evidence tending to show that plaintiff never contacted his employer during medical leave or in the more than 18 weeks following the expiration of medical leave and that she was actively seeking alternate employment was sufficient to show that plaintiff voluntarily ended her employment.

**3. Workers' Compensation—suitable employment—manager position**

The Industrial Commission did not err in a workers' compensation case by finding and concluding that the Market Manager position in Winston-Salem was suitable employment.

**4. Workers' Compensation—return to work—reasonable effort**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff did not make a reasonable effort to return to the Market Manager position in Winston-Salem. There was competent evidence showing that plaintiff made no effort to return to this job.

Appeal by Plaintiff from opinion and award entered 10 March 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 November 2011.

**KEETON v. CIRCLE K**

[217 N.C. App. 332 (2011)]

*Oxner Thomas + Permar, pllc, by Louis A. Waple and Kristin P. Henriksen, for Plaintiff.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by M. Duane Jones and Neil P. Andrews, for Defendants.*

STEPHENS, Judge.

On 28 August 2009, Defendant-employer Circle K and Defendant-carrier Constitution State Service Company ("Defendants") filed with the North Carolina Industrial Commission a Form 24 application to terminate Plaintiff Uldarica M. Keeton's disability benefits, which commenced on 20 October 2008 after Keeton sustained a compensable injury in the course of her employment with Circle K. On 7 October 2009, Special Deputy Commissioner Emily M. Baucom entered an administrative decision and order disapproving Defendants' application. Defendants appealed by requesting an evidentiary hearing.

On 3 December 2009, the matter was heard before Deputy Commissioner Myra L. Griffin. Deputy Commissioner Griffin entered a 4 August 2010 opinion and award, in which she concluded, *inter alia,* that Keeton "failed to prove that any disability or inability to earn wages she has had . . . is related to her [prior compensable] injury by accident." Keeton appealed Deputy Commissioner Griffin's opinion and award to the Full Commission.

The evidence before the Full Commission tended to show the following: Before her injury, Keeton was a Circle K Market Manager in Charlotte whose primary duty was "to supervise the day-to-day operations of each [Circle K] store in [her] market." On 9 June 2008, while traveling to a Circle K store, Keeton was injured in a motor vehicle accident. Defendants admitted compensability, and Keeton sought treatment "for complaints of left knee pain, low back pain and headaches." Thereafter, Keeton "was diagnosed with a lumbar strain, knee contusion, and face/scalp contusion, and was released to return to her regular activity." Following her release, Keeton continued treatment, was referred for physical therapy, and underwent "an MRI scan of the brain." Keeton was subsequently discharged from treatment and again instructed to return to regular activity.

Keeton returned to work at Circle K, and on 25 September 2008, she was transferred to the Winston-Salem market. Keeton traveled to the Winston-Salem market one time before seeking medical treatment on 2 October 2008 for complaints of worsening headaches and low back pain, allegedly associated with her commute from Charlotte to

Winston-Salem. Keeton went on medical leave on 13 October 2008, and disability compensation commenced on 20 October 2008. Thereafter, Keeton "neither returned to Winston-Salem to work as the Market Manager, nor did she contact [Circle K] regarding returning to work in any other capacity," and in June 2009 she "was terminated by [Circle K] for failure to return to work from medical leave."

Between October 2008 and January 2010, Keeton received the following medical advice and treatment: (1) based on an MRI, x-rays, an EMG, and nerve conduction studies, Dr. Theodore Belanger noted "a small central disc protrusion at the L5-S1 level," assigned work restrictions of "no lifting greater than 20 pounds, no prolonged bending, stooping, squatting, kneeling or twisting, and no driving for more than one hour," and assigned "a five percent permanent partial disability rating" to Keeton's back; (2) based on an MRI, an EMG, and a nerve conduction study, Dr. John Welshofer noted "a desiccated disc with central disc bulge at L5-S1" and opined that Keeton's "sitting intolerance was related to pressure in the disc in the low back"; (3) Dr. T. Kern Carlton diagnosed Keeton with a lumbar strain, concussion, and central disc protrusion and placed her on "light duty restrictions which included lifting 20 pounds occasionally"; and (4) a Functional Capacity Evaluation ("FCE") revealed that Keeton was capable of "lifting up to 35 pounds occasionally," "carrying up to 35 pounds occasionally," and "pushing and pulling up to 45 pounds of force." Drs. Belanger, Welshofer, and Carlton each opined that the Circle K Market Manager position in Winston-Salem was suitable employment for Keeton.

Based on the foregoing evidence, the Full Commission found, *inter alia*, that (1) the Market Manager position in Winston-Salem fell within Keeton's permanent restrictions; (2) Keeton did not make a reasonable effort to return to the Market Manager position in Winston-Salem; and (3) Keeton's "refusal of this position was not justified." Therefore, the Full Commission concluded Keeton "is not entitled to any compensation at any time during the continuance" of her unjustified refusal to return to her job. The Full Commission determined that Keeton "is not entitled to payment by [D]efendants of any disability compensation after August 28, 2009, and compensation shall be suspended so long as [Keeton] continues to refuse to accept suitable employment offered by [Circle K]." From the opinion and award of the Full Commission, Keeton appeals.

[1] On appeal, Keeton first argues that the Full Commission's findings of fact and conclusions of law regarding "refusal of suitable

employment" were improper because that issue was not "raised by Defendants in the pre-trial agreement." We disagree. The parties stipulated that the issue of "[w]hether [D]efendants' Form 24 [a]pplication should have been approved" was before the Industrial Commission. In her denial of Defendants' Form 24 application, Special Deputy Commissioner Baucom (1) noted Keeton's contention "that she is physically unable to return to her former position"; (2) noted Defendants' contention that Keeton's physical restrictions "do not impair [her] ability to obtain employment"; (3) found that "the documentation is insufficient to show that [Keeton] is no longer totally disabled"; and (4) concluded that Defendants were not entitled to suspend or terminate Keeton's disability compensation. In our view, the foregoing tends to indicate that in denying Defendants' Form 24 application, Special Deputy Commissioner Baucom considered both the suitability of Keeton's prior employment with Circle K and Keeton's failure to return to that employment. As such, review of Special Deputy Commissioner Baucom's order would necessarily include consideration of Keeton's alleged "refusal of suitable employment." Furthermore, in her review of Special Deputy Commissioner Baucom's order, Deputy Commissioner Griffin found that the Market Manager position was suitable employment for Keeton and that "[Keeton's] refusal of this position was not justified." Because the issue of Keeton's refusal of employment was before both Special Deputy Commissioner Baucom and Deputy Commissioner Griffin, we conclude that the Full Commission properly considered that issue and made relevant findings of fact and conclusions of law. Keeton's argument is overruled.

**[2]** Keeton next argues that the Full Commission erred in not following this Court's holding in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996). Specifically, Keeton claims that there was no "actual refusal" of employment by Keeton such that her termination by Circle K should be considered "constructive refusal of suitable employment" under *Seagraves*. We disagree.

Section 97-32 provides:

> If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.

N.C. Gen. Stat. § 97-32 (2009). This Court has previously held that in applying section 97-32, "the first question is whether the plaintiff's employment was voluntarily or involuntarily terminated." *White v. Weyerhaeuser Co.*, 167 N.C. App. 658, 665, 606 S.E.2d 389, 395 (2005). "If the termination is voluntary and the 'employer meets its burden of showing that a plaintiff unjustifiably refused suitable employment, then the employee is not entitled to any further benefits under [sections] 97-29 or 97-30." *Id.* (quoting *Whitfield v. Lab. Corp. of Am.*, 158 N.C. App. 341, 354-55, 581 S.E.2d 778, 787 (2003)). On other hand, it is only if the departure is determined to have been *involuntary* that the question becomes "whether the termination amounted to a constructive refusal of suitable work under [*Seagraves*]." *Id.* at 665-66, 606 S.E.2d at 395.

In this case, the Full Commission found—and Keeton does not dispute—that after Keeton began medical leave on 13 October 2008, she never returned to work at Circle K and never contacted Circle K "regarding returning to work in any other capacity." Testimony from Keeton's supervisor shows that a Circle K employee's job is protected during a period of medical leave for up to 12 weeks. Although Circle K ultimately terminated Keeton's employment in June 2009, that termination came (1) more than 30 weeks after Keeton's last contact with Circle K, and (2) more than 18 weeks after Keeton's protected medical leave expired. Further, Keeton testified that during the time she was out of work but not yet terminated from employment, she was contacting "staffing agencies and recruiters" to "keep [her] options open and see what was out there." The foregoing evidence— tending to show that Keeton never contacted Circle K during medical leave or in the more than 18 weeks following the expiration of medical leave and that she was actively seeking alternate employment— is sufficient to show that Keeton voluntarily ended her employment at Circle K. This voluntariness obviated any consideration by the Full Commission of "constructive refusal" under *Seagraves. White*, 167 N.C. App. at 665-66, 606 S.E.2d at 395. Keeton's argument is overruled.

[3] Keeton next argues that the Full Commission erred "in finding and concluding that the Market Manager position in Winston-Salem was suitable employment." We are unpersuaded. First, the testimony of Drs. Belanger, Welshofer, and Carlton all support the finding that the Winston-Salem position was suitable. Second, despite any alleged contradiction of the doctors' testimony by the FCE, findings of fact by the Full Commission are conclusive on appeal when supported by competent evidence even where evidence exists that would support a

contrary finding. *Johnson v. S. Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004). Because the Full Commission's finding is supported by competent evidence, we conclude that the Full Commission did not err in finding that the Winston-Salem position was suitable. Further, we conclude that this finding justifies a similar conclusion of law. Keeton's argument is overruled.

**[4]** Finally, Keeton argues that the Full Commission erroneously found that Keeton "did not make a reasonable effort to return to the Market Manager position in Winston-Salem." As such, Keeton contends, the Full Commission's conclusion that Keeton "unjustifiably refused to return to her job" was erroneous. As discussed *supra*, there is competent evidence showing that Keeton made no effort to return to her job at Circle K. Accordingly, the Full Commission's finding that Keeton "did not make a reasonable effort to return" is supported by competent evidence and, thus, binding on appeal. *See id.* The only question, then, is whether the finding that Keeton failed to return to work supports the conclusion that Keeton *unjustifiably* refused to return to work.

Keeton contends that her refusal to return to work was justified because "there is no evidence to establish that [she] knew or should have known that she could at least attempt a trial return to work as a market manager until the completion of the treating physicians' depositions, nearly a year after her June 2009 termination." Keeton argues that prior to the treating physicians' evaluation of the Winston-Salem Market Manager position, she believed she could not return to work and, therefore, her refusal to work was justified. The upshot of Keeton's argument on this issue is that a refusal of suitable employment is "justified" if the employee believes she is unable to perform the available work. For obvious reasons, we decline to hold that the Full Commission must base its determination of whether an employee's refusal is justified solely on that employee's lay opinion that she is unable to perform the work available.

Per section 97-32, it is left to "the opinion of the Industrial Commission" whether an employee's refusal of suitable employment is justified. N.C. Gen. Stat. § 97-32. In this case, the Full Commission concluded as follows:

> The medical evidence, including the testimony of Drs. Belanger, Carlton and Welshofer, establishes that the Market Manager position in Winston-Salem was a suitable position for [Keeton]. Therefore, [Keeton] unjustifiably refused to return to her job,

which was suitable employment available to her, when she stopped reporting to work following her initial visit to the stores in the Winston-Salem market.

This conclusion was supported by the following findings by the Full Commission: after Keeton was terminated, Drs. Belanger, Carlton, and Welshofer reviewed the Winston-Salem Market Manager position and opined that the position was suitable as long as Keeton was permitted to take short breaks during driving and was not required to lift more than 20 pounds; before Keeton was terminated, Keeton was assigned work restrictions of "no lifting greater than 20 pounds, no prolonged bending, stooping, squatting, kneeling or twisting, and no driving for more than one hour"; a Circle K market manager has "the option of performing physical work; however, they are not required to do so" and "have the authority to delegate physical work." These findings, which were adequately supported by the evidence in the record, combined with the absence of any evidence that short driving breaks were prohibited by Circle K, adequately support the Full Commission's conclusion that Keeton unjustifiably refused suitable employment with Circle K. Accordingly, Keeton's argument that the Full Commission erroneously concluded that Keeton's refusal was unjustified is overruled.

We conclude that the Full Commission appropriately determined that Keeton is not entitled to further benefits based on its conclusions that Keeton's employment termination was voluntary and that Circle K met its burden of showing that Keeton unjustifiably refused suitable employment. *White*, 167 N.C. App. at 665, 606 S.E.2d at 395. The Full Commission's opinion and award is

AFFIRMED.

Chief Judge MARTIN and Judge ELMORE concur.