***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, received further evidence, or rehear the parties. The Full Commission adopts the Opinion and Award of Deputy Commissioner Griffin with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of the parties.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between plaintiff and each defendant in sequence.
5. North River Insurance Company was the compensation carrier on the risk at the time of plaintiff's compensable injury on October 3, 2005.
6. American Interstate Insurance Company was the compensation carrier on the risk at the time of plaintiff's alleged compensable injury on January 17, 2007.
7. All of plaintiff's medical records were submitted as a Stipulated Exhibit. The parties were allowed to supplement the medical records offered at the hearing with additional records previously requested and not yet received or otherwise obtained during the hearing before the deputy commissioner and the depositions.
8. All Industrial Commission forms and filings were submitted as a Stipulated Exhibit.
9. The average weekly wage will be determined from a Form 22 to be submitted by each defendant, potentially supplemented by testimony from plaintiff.
10. Plaintiff's alleged date of first injury is October 3, 2005.
11. Plaintiff's alleged date of second injury is March 2, 2006.
12. Plaintiff's alleged date of third injury is January 17, 2007. *Page 3 
 ***********
The following were submitted as:
 EXHIBITS
Stipulated Exhibit Number 1, Pre-Trial Agreement, Industrial Commission Forms, medical Records, Discovery Responses and Employment Records
 ***********
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of Mark W. Galland, M.D., taken on March 10, 2008, with Plaintiff's Deposition Exhibits Numbered 1 through 4 attached to the deposition transcript.
2. Oral deposition of Deitra Toone, M.D., taken on March 11, 2008 with Plaintiff's Deposition Exhibits Numbered 1 through 5 attached to the deposition transcript.
3. Oral deposition of Scott Sanitate, M.D., taken on April 1, 2008 with Defendants' Deposition Exhibits Numbered 1 through 3 attached to the deposition transcript.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 44-year old married high school graduate. After completing high school, plaintiff served in the Army as a heavy equipment operator and mechanic. Plaintiff's principal occupation throughout his adult life has been that of a crane operator. *Page 4 
2. In 1997, plaintiff sustained a work-related injury to his neck while performing his duties for an employer not involved in this action. As a result of his injury, plaintiff underwent a fusion at C6-C7 of his cervical spine. After recovering from the surgery, plaintiff continued to work as a crane operator.
3. On October 3, 2005, plaintiff was employed as a crane operator for Weldon Steel. While working on a project in Virginia Beach, Virginia, plaintiff strained his back when he opened the door of the crane and either stepped in a hole or his foot sunk down in the sand. Plaintiff immediately reported the incident to his supervisor, Mike Reeves. Defendants authorized medical treatment and plaintiff continued to work.
4. On October 5, 2005, plaintiff first sought treatment for his October 3, 2005 incident. Plaintiff was diagnosed with a cervical strain and prescribed medication. Plaintiff continued to receive medical treatment for his neck pain, including physical therapy from various providers.
5. On December 14, 2005, plaintiff began treating with Dr. Gurvinder Deol, who recommended a course of physical therapy following a review of the MRI results. Dr. Deol also completed a Work Status Report indicating that plaintiff could perform light duty work with no lifting over ten pounds. On January 6, 2006, Dr. Deol amended plaintiff's work restrictions to include limited sitting for one to two hours with the ability to stretch and move around as needed.
6. After completing the first course of physical therapy, Dr. Deol prescribed another four to six weeks of physical therapy and gave plaintiff a prescription for a home traction device. On February 8, 2006, Dr. Deol continued plaintiff's current work restrictions.
7. From October 3, 2005 to March 2, 2006, plaintiff continued to work his regular job as a crane operator, earning his pre-injury wages. *Page 5 
8. On March 2, 2006, while working on a job at Cary High School for defendant-employer Weldon Steel, plaintiff testified that when he was climbing into the crane to retrieve some personal items, he wrenched something in his back. He further testified that he reported the incident immediately to his foreman, Chris Parrish, before leaving for his scheduled physical therapy.
9. Chris Parrish testified that the crew was breaking early to allow plaintiff sufficient time to get to his physical therapy appointment. At this time, Mr. Parrish handed out the paychecks. Plaintiff became upset when he saw that his check was not for the amount he expected. After calling the office, Mr. Parrish explained that the entire crew's checks were less because the crew had been sent home early the week before.
10. Plaintiff testified that after he reported the incident to his physical therapist, his physical therapy session was canceled as a result. However, there is not any documentation in the record of a physical therapy visit on March 2, 2006. Plaintiff returned to the job site and informed Mr. Parrish that he was unable to complete physical therapy because he had slipped on the crane while retrieving his personal items. He further explained that he needed to see his physician and would call with the results. This was the first notice that Mr. Parrish received that plaintiff was alleging an injury on March 2, 2006.
11. Because plaintiff was unable to get an immediate appointment with Dr. Deol, the workers' compensation carrier approved an appointment with his primary care physician's office with Dr. Myatt. On March 3, 2006, plaintiff reported pain in his mid-back and that he was almost out of pain medication. Plaintiff did not report a work related injury from the day before, but rather attributed his symptoms to his October 2005 injury. Dr. Myatt took plaintiff out of *Page 6 
work until he could be evaluated by Dr. Deol, although the record is void of any such note. After informing his employer of the same, he was terminated.
12. On March 10, 2006, plaintiff returned to Dr. Deol with complaints of mid-thoracic pain. Plaintiff did report reinjuring himself at work, but provided no details. Physical therapy was prescribed and plaintiff was continued out of work. A Functional Capacity Evaluation (FCE) was completed on May 1, 2006 revealing that plaintiff was capable of sustaining a medium level of work for an eight-hour day with a twenty-five pound lifting restriction. Based on the results of the FCE, Dr. Deol released plaintiff to return to full-time employment with a lifting restriction of twenty-five pounds and no excessive squatting, climbing, pushing, pulling, or stooping on May 5, 2006.
13. Plaintiff did not file a claim for the alleged incident on March 2, 2006 and defendants did not accept liability of the same. However, defendant-carrier Crum and Forster paid temporary total disability benefits pursuant to the Virginia Workers' Compensation Act beginning March 3, 2006 and ceased payments as of May 5, 2006, when Dr. Deol, the authorized treating physician for the October 5, 2005 injury, released plaintiff to return to restricted work.
14. Plaintiff remained out of work from March 3, 2006 through May 9, 2006. Plaintiff returned to work as a crane operator for Tri-State Erectors on May 9, 2006 earning the same or greater wages as he had earned with Weldon Steel.
15. After learning that Virginia state law did not provide for permanent partial disability benefits for back injuries, plaintiff filed a Form 18 with Industrial Commission seeking benefits for the injury he sustained on October 3, 2005. Subsequently, defendants Weldon Steel and Crum Forster filed a Form 60 admitting liability for a cervical strain sustained on October 3, *Page 7 
2005. Defendants Weldon Steel and Crum Forster also filed a Form 61 denying plaintiff's claim for thoracic and lumbar injuries and any resulting disability.
16. On October 21, 2006, plaintiff returned to Dr. Deol's practice at Orthopaedic Specialists of North Carolina to obtain a permanent disability rating. As Dr. Deol had left the practice, Dr. Mark Galland examined plaintiff and provided a thirty percent permanent partial impairment rating to his cervical spine. When questioned, Dr. Galland had no recollection of plaintiff or how he arrived at the thirty percent permanent partial disability rating. Dr. Galland explained that he was not a spine specialist and did not normally provide cervical ratings, but did so in this case because Dr. Deol had left the practice and there was no other spine specialist to provide this service at the time.
17. Plaintiff alleges that, on or about January 17, 2007, he was working for Tri-State Erectors when he felt mid to low back pain when he twisted to the right while operating a crane. Plaintiff did not indicate an injury or trauma. Plaintiff filed a claim for this injury against Tri-State Erectors on April 9, 2007.
18. On or about January 17, 2007, plaintiff informed T.J. Cartwright, owner of Tri-State Erectors that his back was hurting in the same place as in his prior claim with Weldon Steel. Plaintiff also informed his supervisor, Michael Scott and another employee, Mikele Wilson, that he was experiencing pain as a result of his prior injuries. He did not report a specific incident to Mr. Cartwright, Mr. Scott, or Mr. Wilson.
19. On January 20, 2007, plaintiff resigned from his employment with Tri-State Erectors citing his ongoing health issues related to his prior injuries.
20. On January 20, 2007, plaintiff sought treatment with Dr. Galland for complaints of cervical and thoracic back pain. Plaintiff indicated that he was taking six to eight Percocet *Page 8 
tablets per day to alleviate his pain. Plaintiff did not report a new injury or trauma as the basis of his current pain. Dr. Galland recommended an MRI of the cervical and thoracic spine and referred plaintiff to a spine specialist, Dr. Paul Suh.
21. On January 23, 2007, plaintiff saw Dr. Suh and provided a history of a 1996 injury, an October 2005 injury, and a February/March 2006 injury, but did not report the January 2007 injury. Dr. Suh reviewed the results of the MRI scans provided by plaintiff and diagnosed plaintiff with cervical and thoracic degenerative disc disease. Dr. Suh recommended surgery for plaintiff's cervical spine and physical therapy for the neck and thoracic spine. Plaintiff was released to return to work with restrictions.
22. On March 8, 2007, plaintiff was referred to Dr. William Lestini for a second opinion. Plaintiff provided details regarding an October 2005 incident, but failed to report a January 17, 2007 incident. Dr. Lestini recommended an EMG study to determine whether plaintiff would benefit from surgery.
23. On March 28, 2007, Dr. Sanitate performed EMG and nerve conduction studies. Plaintiff provided a history of an October 3, 2005 injury, March 2007 injury, and January 2007 injury on the intake form with a typewritten attachment. Plaintiff also verbally reported these three injury dates to Dr. Sanitate. Plaintiff advised Dr. Sanitate that he was experiencing more lumbar than cervical symptoms at that time. Dr. Sanitate acknowledged that he was only authorized to evaluate plaintiff's cervical spine and deferred any examination to the lumbar region.
24. On April 19, 2007, plaintiff returned to Dr. Lestini to review the EMG results, which were unremarkable with no sign of radiculopathy, plexopathy, neuropathy, or peripheral entrapment. As a result, Dr. Lestini released plaintiff to return to work with no lifting over *Page 9 
twenty pounds and assigned a five percent permanent partial disability rating to the cervical and thoracic region. The undersigned give greater weight to the medical opinion of Dr. Lestini than that of Dr. Galland with regard to the permanent partial disability rating for plaintiff's cervical injury. Dr. Lestini is a spine specialist and followed the Industrial Commission's rating guidelines when he assigned the rating.
25. Plaintiff continued to experience mid and low back pain, radiating into his legs. As a result, he sought medical treatment on his own with Dr. Mark Mikles on April 30, 2007. Dr. Mikles recommended continued conservative treatment, including physical therapy and pain management. Plaintiff received pain management in the form of various facet injections and bilateral branch blocks in the back performed by Dr. Deitra Williams-Toone. Dr. Williams-Toone also administered a medial branch block, radiofrequency ablation on plaintiff's left side. Plaintiff experienced excellent results, but was financially unable to continue with this medical treatment.
26. Dr. Galland is not a spine specialist and he had no opinion regarding the cause of plaintiff's complaints and pain on January 20, 2007. Accordingly, the testimony of Dr. Galland is insufficient to prove a causal connection between plaintiff's alleged January 17, 2007 injury and his back condition.
27. Dr. Williams-Toone had no comment as to whether the injuries plaintiff sustained in October 2005 and March 2006 were the cause of the pain for which she was providing treatment. She was not aware of the January 2007 incident and was unable to provide an opinion on causation. Accordingly, the testimony of Dr. Williams-Toone is insufficient to prove a causal connection between plaintiff's alleged January 17, 2007 injury and his back condition. *Page 10 
28. The greater weight of the evidence establishes that plaintiff did not suffer an injury by accident or specific traumatic incident on March 2, 2006 or January 17, 2007.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 3, 2005, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant Weldon Steel. N.C. Gen. Stat. § 97-2(6).
2. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has the burden of proving a causal relationship between the injury and his employment with defendant. Whitfield v. Lab. Corp. of Amer.,158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003). A plaintiff must prove causation by the "greater weight" of the evidence. Phillips v. U.S. Air,Inc., 120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). In cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation. Click v. PilotFreight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). The causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility." Holley v.ACTS, Inc., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). In the instant case, plaintiff has presented insufficient evidence that his job duties on October 3, 2005, are the cause of any alleged ongoing disability. *Page 11 
3. As a result of his compensable October 3, 2005 injury, plaintiff is entitled to permanent partial disability benefits for the five percent permanent partial disability rating to his cervical spine. N.C. Gen. Stat. § 97-31(23).
4. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Plaintiff failed to prove, by the greater weight of the evidence, that he sustained a compensable injury by accident or specific traumatic incident to his back while at work with defendant Weldon Steel on March 2, 2006. Id.; Causby v. Bernhardt Furniture Co., 83 N.C. App. 650,351 S.E.2d 106 (1986).
5. Plaintiff failed to prove, by the greater weight of the evidence, that he sustained a compensable injury by accident or specific traumatic incident to his back while at work for Tri-State Erectors on January 17, 2007. N.C. Gen. Stat. § 97-2(6); Causby v. Bernhardt Furniture Co.,83 N.C. App. 650, 351 S.E.2d 106 (1986).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendants Weldon Steel and Crum and Forster shall pay plaintiff $8,000.40 ($533.36 weekly compensation rate x 15 weeks) for the five percent permanent partial impairment rating to plaintiff's back. This amount has accrued and shall be paid to plaintiff in one lump sum.
2. Plaintiff's claim for benefits related to an alleged March 2, 2006 incident against Weldon Steel and Crum and Forster is HEREBY DENIED. *Page 12 
3. Plaintiff's claim for benefits related to an alleged January 17, 2007 incident against Tri-State Erectors and American Interstate Insurance Company is HEREBY DENIED.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1of this AWARD is approved for plaintiff's counsel and shall be paid by defendants Weldon Steel and Crum and Forster in one lump sum directly to plaintiff's counsel.
5. Each party shall bear its own costs.
This the 27th day of April 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER