***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The parties stipulate to the average weekly wage of $505.10, yielding a compensation rate of $336.75.
5. The parties stipulated into evidence as Stipulated Exhibit No. 1, Pre-Trial Agreement.
6. The parties stipulated into evidence as Stipulated Exhibit No. 2, Medical records.
7. The parties stipulated into evidence as Stipulated Exhibit No. 3, Industrial Commission Forms, Filings, and Discovery documentation.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff alleges that, on July 20, 2007, in the course of his employment for Defendant-Employer, he suffered injuries to his spine, left and right legs, and right shoulder (I.C. No. 784900). Plaintiff also alleges he suffered a second injury when, on November 7, 2007, in the course of leaving Defendant-Employer's premises, he felt pain in his back and/or left side and fell to the ground. (I.C. No. 907581). Defendants denied both of Plaintiff's claims.
2. Plaintiff is a 62 year old male. He has numerous, non-job-related, medical conditions. Around 2002 or 2003, Plaintiff suffered a heart attack and underwent triple bypass surgery. He currently suffers from coronary artery disease, peripheral vascular disease, and *Page 3 
peripheral neuropathy. As a result of heart and vascular problems, Plaintiff's treating physician for that condition had told him he could never do more than light duty for the rest of his life. Plaintiff also suffers from Type II diabetes, hypertension, and chronic renal failure. He also suffers frequent shortness of breath as a consequence of having smoked for fifty years, obesity, and his "non-fit condition." In April 2008, Plaintiff told Dr. Reece that his shortness of breath prevented him from walking five minutes without having to stop and sit down.
3. On July 20, 2007, Plaintiff worked for Defendant-Employer as a truck driver. Plaintiff alleges that, on that date, he and another co-worker were carrying a piece of sheet rock through a doorway, when Plaintiff slipped on a piece of plastic sheeting placed over the threshold of the doorway and hit his right shoulder and head on the side of the doorway. Plaintiff did not fall to the ground. Plaintiff alleges that, as a result of this incident, he suffered compensable injuries to his back, left and right legs, and right shoulder. Plaintiff finished unloading sheetrock that day.
4. On July 30, 2007, Plaintiff saw Dr. Michael Gray. This visit was paid for by Defendants. Dr. Gray examined Plaintiff and assessed him as having suffered a right calf strain and a lumbosacral strain. X-rays of the lumbosacral spine revealed no acute changes. Dr. Gray assigned Plaintiff work restrictions of no lifting over 15 pounds, no repeated bending, stooping, or lifting, and no ladder or overhead work for the next three days.
5. Plaintiff subsequently returned to work and was assigned to work as the gate guard, which required Plaintiff to "count cars," "make sure nobody is stealing nothing and make sure they get the right materials," walking, and "sometimes showing people where certain things are." Plaintiff admitted at the hearing the guard gate position accommodated Dr. Gray's *Page 4 
restrictions. On August 7, 2007, Dr. Gray referred Plaintiff to Dr. Christopher S. Delaney with Coastal Physical Medicine and Rehabilitation Services.
6. At some point within several weeks of going back to work at light duty, Plaintiff stopped working, even though his light duty restrictions were being accommodated with the guard gate position. In response to Plaintiff filing a Form 18 arising out of the July 20, 2007, incident, Defendants filed a Form 61, but they continued to pay for Plaintiff's medical treatment. Plaintiff had not been written out of work by any treating physician, and Defendants did not start payment of disability benefits. However, Defendant-Employer continued to pay Plaintiff while he was out of work, through November 7, 2007.
7. On October 15, 2007, Plaintiff presented for an authorized appointment with Dr. Delaney. Plaintiff complained of low back pain and right knee pain. Dr. Delaney took Plaintiff's medical history and noted it was significant for obesity, heart attack, coronary artery bypass grafting, hypertension, diabetes, and benign prostatic hypertrophy. Upon physical examination, Dr. Delaney noted Plaintiff was obese and did not appear well, including that he was grunting and had remarkably poor activity tolerance, becoming short of breath even with simple maneuvers involved in the examination. Dr. Delaney noted Plaintiff's examination was "disturbing" due to multiple non-organic indicators of pain. Dr. Delaney initially assessed Plaintiff with possible spinal stenosis with neurogenic claudication versus vasculopathy with possible vascular claudication. Dr. Delaney assigned restrictions of no prolonged ambulation and frequent rest breaks, pending a MRI.
8. On October 23, 2007, Plaintiff underwent a lumbar MRI that revealed spondylosis centered upon L4-5 and L5-S1 with right neuroforaminal stenosis at each level. On October 29, 2007, Plaintiff returned to Dr. Delaney. Dr. Delaney noted that, "On examination again, he *Page 5 
appears overweight and generally just not a well man." Dr. Delaney found no abnormal findings in his physical exam and stated that Plaintiff continued "to demonstrate non-physiologic indicators of pain" and exhibited "obvious symptom exaggeration." Dr. Delaney interpreted Plaintiff's MRI to reveal moderate spinal stenosis at the L4 level and bilateral foraminal stenosis at the L5 level. Dr. Delaney opined the MRI findings "are obviously not traumatic; they are the result of degenerative changes over time." Dr. Delaney continued Plaintiff's restrictions of taking frequent rest breaks and avoiding prolonged ambulation.
9. Plaintiff returned to work on November 7, 2007. Plaintiff alleges he suffered a second work injury that same day when he fell in the employer's parking lot on the Defendant-Employer's premises. Plaintiff testified, "I was going to the car and I had this sharp pain in my back and all at once I just hit the ground." Plaintiff does not allege that any unusual or unexpected event precipitated his fall, and he did not attribute his fall to any particular condition of the workplace.
10. Following that fall, Plaintiff was taken by ambulance to the emergency room at Carteret General Hospital, complaining that "all of a sudden" his left leg "gave out" and he fell onto his left side. Plaintiff was kept overnight out of concern that he possibly suffered a stroke or transient ischemic attack (TIA). Plaintiff underwent a battery of tests, based upon which the hospital doctors concluded there was likely no evidence of a stroke.
11. At the hospital, Plaintiff was evaluated by numerous doctors, including Dr. Karen Ruth Skarda, the admitting physician, and Dr. Thomas Bates, who appears to have examined Plaintiff from an orthopedic standpoint. Dr. Bates reviewed Plaintiff's October 15, 2007, MRI report, from which he concluded there was evidence of spondylosis at L4 and L5, as well as L5 and S1, with some right neuroforaminal stenosis but, by the report, no significant left lateral *Page 6 
stenosis. Dr. Bates assessed Plaintiff with low back pain with facet arthrosis and degenerative disk disease. At discharge, Plaintiff's diagnoses were low back pain with spinal stenosis, cystic kidneys, diabetes mellitus, coronary artery disease, dyslipidemia (elevated lipids in blood), and hypertension. Plaintiff was referred for physical therapy and to his primary care physician, Dr. Donald Reece, at Carteret Family Practice, Inc. Upon discharge, the hospital staff did not refer Plaintiff to a back specialist, but Plaintiff insisted on such a referral, and one was provided to Dr. James Harvell. The medical costs associated with Plaintiff's hospitalization were paid for by Defendants. Defendants have paid no medical benefits since Plaintiff's hospitalization.
12. On November 20, 2007, Plaintiff presented to Dr. Reece, who noted that Plaintiff complained of chronic back pain since the July 20, 2007, incident, but that Dr. Delaney had told him his back condition was not work-related. Dr. Reece restricted Plaintiff to sedentary duty for two weeks. Plaintiff did not attempt to return to work for Defendant-Employer. Plaintiff never returned to work for Defendant-Employer after November 7, 2007. Plaintiff went out on leave under the Family and Medical Leave Act (FMLA). Plaintiff's leave expired on January 31, 2008, at which time he did not return to work, and Plaintiff's employment was terminated.
13. On January 17, 2008, Plaintiff presented to Dr. Harvell. Plaintiff told Dr. Harvell of the alleged incident on July 20, 2007, and related to him that, after being unable to perform his job duties, he was taken out of work on September 9, 2007. Despite this notation, there is no evidence that Plaintiff was in fact taken completely out of work by any physician. Dr. Harvell referred Plaintiff for a CT myelogram and EMG and nerve conduction studies. On January 22, 2008, Plaintiff underwent a CT myelogram. On January 31, 2008, Plaintiff returned to Dr. Harvell, who interpreted the CT myelogram to reveal degenerative spondylolisthesis with stenosis involving L4-5 and mild to moderately severe degenerative disc disease involving L3-4, L4-5, and *Page 7 
L5-S1. Dr. Harvell discussed surgical versus non-surgical management. Plaintiff elected surgical management, but Dr. Harvell said he would not consider this until Plaintiff improved his abnormally high blood sugar levels.
14. On February 7, 2008, Plaintiff went to Dr. Reece and asked for a note saying he could not work. Dr. Reece advised Plaintiff that, "unless he was dead or dying he could return to sedentary activities."
15. On April 15, 2008, Plaintiff returned to Dr. Harvell, where he complained he was still symptomatic and desired surgery. However, Plaintiff wanted to wait on the outcome of his workers' compensation claim. Dr. Harvell advised Plaintiff he would wait for him to contact his office at his discretion.
16. In February 2008, Plaintiff applied for Social Security Disability Insurance (SSDI). He testified he was seeking SSDI based on all of his various medical conditions.
17. No physician in this case has opined that Plaintiff's alleged back pain and radiating leg pain (or any other alleged injury or condition to any other body part) were the result of either an incident at work on July 20, 2007, or November 7, 2007. Dr. Reece, a family practitioner, testified his treatment of Plaintiff has been focused on his "overall picture of health," and not primarily on his back pain. Dr. Reece felt that the numbness and burning Plaintiff felt in his legs was more likely due to his pre-existing condition for diabetes, rather than his alleged back injury. Dr. Reece ultimately testified, however, that he would defer to Dr. Delaney's opinion about whether an alleged injury was the cause of his back pain. Dr. Reece also testified the work restrictions he assigned Plaintiff arose out of all of his various medical conditions and was not focused on Plaintiff's back pain. Dr. Reece felt Plaintiff's cardio-vascular problems were much more serious. Dr. Reece testified that if Plaintiff had come to see him just prior to the July 20, 2007, *Page 8 
incident, he would have advised him to avoid certain duties because of his unrelated medical conditions.
18. Dr. Delaney is board certified for Physiatry, Disability Analysis, and Spinal Cord Injury Medicine. Dr. Delaney testified it was his opinion to a reasonable degree of medical certainty that Plaintiff's findings on the October 23, 2007, MRI were not consistent with any acute trauma; rather, they were consistent with long-standing, degenerative changes in Plaintiff's spine. Like Dr. Reece, Dr. Delaney also felt that the symptoms in Plaintiff's lower extremities could have equally been related to another condition, vasculopathy, as opposed to possible neurogenic claudication associated with the degenerative changes. Consistent with his medical records, Dr. Delaney testified Plaintiff's case was "complicated" by "invalid" pain behaviors, including "obvious volitional efforts to exaggerate" his symptoms.
19. Dr. Skarda was the only physician asked about the cause of Plaintiff's November 7, 2007, fall. Dr. Skarda testified she did not know what caused Plaintiff's fall on November 7, 2007. She testified, in light of Plaintiff's numerous medical conditions, there were "multiple choices and options" as to the cause of his fall, including that "we can all fall any time."
20. No physician in this case has testified Plaintiff's current complaints of continuing pain are causally related to either the July 20, 2007, or the November 7, 2007, incidents.
21. Although Plaintiff originally claimed injuries to one or both shoulders, as well as a possible knee injury, Plaintiff has not sought treatment for those conditions.
22. Plaintiff has made no attempts to seek other employment since his termination from Defendant-Employer.
23. No physician has written Plaintiff completely out of work. *Page 9 
24. Plaintiff's testimony of complaints of ongoing pain related to either the July 20, 2007, or November 7, 2007, incidents is given little to no weight, as this testimony is deemed not credible.
25. Plaintiff's fall at work on November 7, 2007, did not arise out of the job. It was also not caused by any effects of the July 20, 2007 incident. Rather, the greater weight of the evidence shows, and the Commission finds, that is was solely the result of an idiopathic condition.
26. Any continuing medical treatment Plaintiff may require is not causally related the alleged injuries of July 20, 2007, or November 7, 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The claimant in a workers' compensation case bears the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and his employment. Whitfield v. Lab. Corp. of Amer.,158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003). Plaintiff must prove causation by the "greater weight" of the evidence or a "preponderance" of the evidence. Phillips v. U.S. Air, Inc.,120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). In cases involving complicated medical questions, those questions must be addressed by an expert and only an expert can give competent opinion testimony as to the issue of causation. Click v. Pilot FreightCarriers, 300 N.C. 164, 265 S.E.2d 389, (1980). The causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility."Holley v. ACTS, Inc.,357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003). *Page 10 
2. Plaintiff has failed to establish that he suffered any compensable injury on July 20, 2007. Furthermore, even if Plaintiff suffered some injury on July 20, 2007, the greater weight of the evidence indicates that, to the extent Plaintiff suffers from any ongoing pain, he has failed to establish that such pain is as a result of the July 20, 2007, incident.
3. Plaintiff has failed to meet his burden of establishing the compensability of the November 7, 2007, fall at work.
4. Plaintiff has the burden of proving disability. "Disability" is defined as "the incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." See N.C. Gen. Stat. § 97-2(9). In order to prove disability, Plaintiff must show he is incapable of earning pre-injury wages in either the same or in any other employment, and that the incapacity to earn pre-injury wages was caused by his injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet this burden by showing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages.Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Plaintiff has not shown any disability as a result of either the July 20, 2007, or the November 7, 2007, alleged incidents.
 *********** *Page 11 
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for benefits in connection with either the July 20, 2007, or November 7, 2007, incidents is DENIED.
2. Each side shall bear its own costs.
This the 1st day of July, 2010.
 S/__________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/__________________ STACI T. MEYER COMMISSIONER
 S/__________________ PAMELA T. YOUNG CHAIR *Page 1