*********** *Page 2 
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The defendants have shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** EXHIBITS
The following were submitted to the Deputy Commissioner as stipulated exhibits:
 • Exhibit 1: Plaintiff's medical records
 • Exhibit 2: Transcript of plaintiff's recorded statement
 • Exhibit 3: Industrial Commission Forms
 • Exhibit 4: Form 22
 • Exhibit 5: Fax from plaintiff to Industrial Commission dated July 9, 2009
 • Exhibit 6: Fax from Trish Gibson to RoMedical dated April 20, 2009
 • Exhibit 7: Letter from Dr. Dagenhart to defendant-carrier dated May 18, 2008
The following were submitted to the Deputy Commissioner as Plaintiff's exhibits:
 • Exhibit 1: Copies of photographs of wrecked car
 • Exhibit 2: Accident report
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. The parties are subject to the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times there existed between defendant-employer and plaintiff an employer-employee relationship.
3. At all relevant times, defendant-carrier was the carrier on the risk in this claim.
4. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years old, with a date of birth of August 29, 1960. On the date of injury in this claim, he was a regional sales manager for defendant-employer, which manufactures safety lighting.
5. On Wednesday, November 14, 2007, plaintiff was on a sales trip in Alabama. While on company business, he was a passenger in the right front seat of a 2003 Toyota Avalon sedan, travelling south in the left lane of southbound Interstate 65 at about sixty-five (65) miles per hour, when the driver swerved to miss a truck tire recap in his lane. The car went into the median, the driver overcorrected while getting back onto the highway, and the right side of the car sideswiped the trailer of a tractor-trailer rig that was travelling south in the right lane. At the moment of impact, plaintiff was wearing his seat belt and was sitting with both hands in his lap with his cell phone in his hands preparing to make a call. Plaintiff believes that he remained in that position throughout the wreck. The impact blew out all the windows of the car and crumpled the passenger side of the roof of the car.
6. In the collision, plaintiff sustained an impact to the outside of his right arm from the tip of his shoulder down to his elbow, where the passenger door pushed in on him. No airbag deployed.
7. After the wreck, plaintiff had cuts on his right arm. He also had swelling on the back side of his right arm above the elbow. He went to the local emergency room in Alabama, *Page 4 
where he complained of pain in his neck, posterior chest, and right shoulder. The pain diagram from the emergency room showed tenderness all about plaintiff's right shoulder.
8. X-rays of plaintiff's cervical spine, thoracic spine, chest, and right humerus were taken at the emergency room and read as negative for fractures. Plaintiff was treated with a Toradol injection for pain, diagnosed with contusions to his chest and right arm, and released with his right arm in a sling.
9. Plaintiff returned to his home in North Carolina the next day and rested over the weekend. After working from home on November 15 and 16, 2007, he returned to work in his regular job on Monday, November 19, 2007.
10. The Form 19 "Employer's Report of Employee's Injury" completed by defendant-employer's human resources manager on November 19, 2007, stated that plaintiff had "soreness in back, neck right shoulder/arm; small cuts."
11. Plaintiff provided a recorded statement to defendant-carrier's adjustor on November 20, 2007. The purpose of the recorded statement appears to have been to ascertain whether plaintiff had sustained a compensable injury by accident, and plaintiff was not asked specifically to list his injuries or symptoms. Nonetheless, plaintiff did mention that he had pain in his "shoulder" when he went to the emergency room.
12. After the wreck, plaintiff continued to have soreness and stiffness in his back, neck, right shoulder, right arm, and right hip. He reported to defendant-employer that he was continuing to have pain, and defendant-carrier sent him to RoMedical, where he initially presented on November 27, 2007.
13. At RoMedical, plaintiff initially saw nurse practitioner Ladonna Cook, and her record shows that he complained of neck pain, especially on the right side at the trapezius area, *Page 5 
and lower back pain on the right side. Ms. Cook diagnosed plaintiff with cervicalgia and neck pain and prescribed medications.
14. Plaintiff returned to Ms. Cook on December 17, 2007, complaining of continuing pain in his mid-back and intermittent tingling and numbness in his right long, ring, and little fingers. Ms. Cook diagnosed plaintiff with cervicalgia and cervical radiculopathy and ordered MRIs of the cervical and thoracic spine.
15. Plaintiff underwent the MRIs on January 4, 2008, which showed mild cervical degenerative disc disease with no herniation or other significant findings.
16. Plaintiff saw Dr. Dagenhart at RoMedical for the first time on January 9, 2008. Plaintiff complained of continuing back pain in the mid-to low thoracic area as well as to the right of his S1 joint. He also continued to complain of intermittent tingling and numbness in his three fingers. Dr. Dagenhart diagnosed persistent back pain with ulnar neuropathy of the right hand and referred plaintiff for physical therapy.
17. Plaintiff did twelve sessions of physical therapy from January 14, 2008, through February 25, 2008. His chief complaint was low back pain, and physical therapy focused on his back. At the last visit, plaintiff stated he was seventy-five (75) percent better, and he was discharged to continue with a home exercise program.
18. There is no mention in plaintiff's physical therapy records of any right shoulder pain, other than a passing reference on January 18, 2008, of "increased discomfort in his R shoulder," upon performance of a particular exercise, which pain "eased with repetitions." However, two different exercises in physical therapy highlighted to plaintiff his ongoing right shoulder discomfort: one exercise involved him laying on his back on a round tube and bringing *Page 6 
his right arm over his head with his shoulder blades dropped back, and the other involved him standing in a doorway and pushing his arms and shoulders back.
19. After being released from physical therapy, plaintiff joined his local YMCA and continued to exercise as directed by the physical therapist.
20. Plaintiff returned to Dr. Dagenhart on March 3, 2008, complaining of mild pain between his shoulder blades and mild discomfort in the right para-lumbar area. Dr. Dagenhart diagnosed a healing muscle sprain of the thoracic and lumbar spine and recommended that he continue his home exercises.
21. On April 2, 2008, Dr. Dagenhart released plaintiff from treatment for his back symptoms. Dr. Dagenhart's note states that, upon physical exam, plaintiff had "full range of motion in all extremities with normal strength."
22. At some point in March of 2009, plaintiff began having muscle spasms in his upper right arm. He returned to Dr. Dagenhart on April 6, 2009, with complaints of pain and intermittent spasms in the right dorsal shoulder, and he sought to have Dr. Dagenhart "re-open" his medical treatment to provide care for his right shoulder condition. Dr. Dagenhart noted that plaintiff reported that he noticed his right shoulder pain mainly when throwing or swinging a golf club, and that he occasionally felt grinding in the shoulder and some weakness with abduction and flexion against resistance.
23. On April 6, 2009, Dr. Dagenhart wrote that he could not directly relate plaintiff's right shoulder pain to the November 14, 2007, wreck because: (1) he had no record of plaintiff ever complaining to him before of this type of pain in his right shoulder joint or arm; (2) plaintiff reported that the pain had begun only two weeks earlier; and (3) as Dr. Dagenhart noted, it is *Page 7 
"common" for shoulder discomfort to start with "wear and tear especially in someone who is active with golf and other things."
24. On May 18, 2009, after having the initial Form 19 report of right shoulder pain brought to his attention, Dr. Dagenhart wrote to defendant-carrier that it would be reasonable for plaintiff's right shoulder to be examined by Dr. Latimer, whom Dr. Dagenhart referred to in the letter as RoMedical's "shoulder specialist."
25. After Dr. Dagenhart's May 18, 2009 letter, defendant-carrier sent plaintiff for an evaluation of his right shoulder with Dr. Latimer.
26. Plaintiff presented to Dr. Latimer on June 4, 2009, with a complaint of continued right shoulder and arm pain, with a pulling sensation with overhead activities, and a catching sensation in the posterior superior aspect of his right shoulder. Dr. Latimer assessed, "Patient with continued right shoulder pain after significant traumatic injury in a work related motor vehicle accident. The patient has complained of pain in his right shoulder ever since the accident. His symptoms are consistent with a possible labral tear inside his shoulder." Dr. Latimer requested an MRI, but defendant-carrier denied it, contending that plaintiff's right shoulder condition was not related to the wreck.
27. Since the November 14, 2007 wreck, plaintiff has never gotten to the point that he was without right shoulder discomfort. Certain movements of his shoulders, such as rolling them back or reaching overhead, cause a burning, stretching sensation in his right shoulder. Some weight-lifting causes pain in his right shoulder. Plaintiff does not feel that he has physical limitations related to his right shoulder, just pain.
28. Before the wreck, plaintiff did not have any symptoms in his right shoulder. Since the wreck, he has had no other acute injuries to his right shoulder. *Page 8 
29. Dr. Dagenhart has been board-certified in family medicine since 1991. He opined that the November 14, 2007 wreck more likely than not did not cause, aggravate and/or significantly contribute to plaintiff's right shoulder condition. He based his opinion on plaintiff's medical records, which indicated that plaintiff's right shoulder pain began two weeks before the April 6, 2009 visit. Dr. Dagenhart stated that his records would place the onset of plaintiff's right shoulder pain about sixteen (16) months after the wreck. During the interim, Dr. Dagenhart stated plaintiff underwent extensive physical therapy with no complaints. Dr. Dagenhart also noted that he could find no prior mention in his records of pain in any way similar to the pain plaintiff complained of during the April 6, 2009 visit.
30. Dr. Latimer has been a board-certified orthopedic surgeon since 1999. He completed a sports medicine/shoulder fellowship in 1996 at the Kerlan-Jobe Orthopedic Clinic in Los Angeles. Based solely upon information provided to him by plaintiff, Dr. Latimer wrote, "(plaintiff) sustained significant blunt trauma to his right shoulder on November 14, 2007. He had continued pain in that shoulder until I saw him 6/4/2009. It is my medical opinion that his current right shoulder symptoms are the result of the injuries he sustained on November 14, 2007." Dr. Latimer confirmed that he continues to recommend a gadolinium arthrogram MRI of plaintiff's right shoulder in order to determine if a structural abnormality is causing his current symptoms.
31. Dr. Latimer was subsequently given plaintiff's medical records, which included Dr. Dagenhart's note from April 6, 2009. After having had the opportunity to review those records and that note, Dr. Latimer discusses the basis for his original opinion in his letter dated October 14, 2010. Dr. Latimer writes, "On that date of 06-04-09 I stated that the patient had complained of pain in his shoulder ever since his accident. That statement was based on information provided to me by the patient and not by any information from other sources. I have reviewed the enclosed *Page 9 
medical records that were presented with this set of questions and after reviewing such it becomes clear from Dr. Dagenhart's note that Mr. Given did not complain of any pain in his shoulder shortly after the time of his injury until seeing Dr. Dagenhart on 04-06-09."
32. Based on the more complete information that he was able to review, Dr. Latimer then provides another opinion on causation. Dr. Latimer writes, "It is my opinion based on my training, education and experience that given the fact that Mr. Givens stated to Dr. Dagenhart that he had only had this pain for the last two weeks when he was seen in April 2009 that it is not reasonable to a degree of medical certainty in any fashion that his shoulder pain in 2009 is related in any way to his 11-14-07 accident."
33. The Full Commission finds by the greater weight of the medical evidence of record that the motor vehicle accident on November 14, 2007, did not cause or aggravate plaintiff's right shoulder condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff-employee is an employee as defined by the Workers' Compensation Act, and defendant-employer is an employer as defined by the Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(2); 97-2(3). Plaintiff and defendant-employer are subject to and bound by the provisions of the Workers' Compensation Act. N.C. Gen. Stat. § 97-3; Pilley v. Greenville Cotton Mills,201 N.C. 426, 160 S.E. 479 (1931).
2. In a workers' compensation claim, the employee has the burden of proving that his claim is compensable. Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). *Page 10 
Plaintiff bears the burden of proving each and every element of compensability, including causation. Whitfield v. Laboratory Corp. ofAmerica, 158 N.C. App. 341, 581 S.E.2d 778 (2003). To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley v. ACTS, Inc.,357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). The medical evidence in this case does not establish a causal connection between plaintiff's right shoulder symptoms and the November 14, 2007 accident. Therefore, plaintiff has failed to prove by the greater weight of the competent evidence that any incident on November 14, 2007, caused or aggravated his right shoulder condition. Accordingly, Plaintiff's claim must be denied. N.C. Gen. Stat. § 97-2(6).
3. Given the causation ruling in this matter, plaintiff is not entitled to any further medical compensation. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 ORDER
1. Under the law, plaintiff's claim must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This the 14th day of February, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING: *Page 11 
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1