***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The defendant has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. Plaintiff-employee is Mr. Gregory D. Smith.
3. Defendant-employer, Wake County Government, is self-insured.
4. The third-party administrator is Key Risk Management.
5. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. An employer-employee relationship existed between defendant-employer and plaintiff-employee on July 9, 2009, the date of injury.
6. This claim has been denied by defendant-employer.
7. Plaintiff-employee has not worked from September 4, 2009, through the present.
8. The parties submitted the following to the Deputy Commissioner:
 a. A Notebook of Various Stipulated Exhibits, which were admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 i. Medical Records;
 ii. Industrial Commission Forms;
 iii. A Disability Application, and;
 iv. A Zebulon Police Report.
9. Also made part of the record are the depositions of Dr. Hardy Singh, and Dr. Russell Margraf.
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Houser's January 24, 2011 Opinion and Award, the Full Commission addresses the following: *Page 3 
 ISSUES
Whether on July 9, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer involving his left-arm/shoulder and neck due to an altercation with an intruder at a home he was inspecting, and if so, to what indemnity and medical compensation, if any, is he entitled?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing date before the Deputy Commissioner, plaintiff was fifty (50) years of age, with his date of birth being May 28, 1960. Plaintiff has obtained a GED, and has taken community college courses in electrical work and inspections.
2. Plaintiff began working as a building inspector for defendant-employer in 2005. Prior to that time, plaintiff worked in the same capacity for Johnston County. Additionally, prior to becoming an inspector, plaintiff primarily performed preventive maintenance and construction work.
3. Plaintiff testified that prior to July 9, 2009, he had not sustained any neck or left-arm/shoulder injuries.
4. On July 9, 2009, plaintiff was performing an inspection for defendant-employer on a home that was being renovated. Plaintiff testified that upon arriving at the home, he found that the key that was supposed to be left in a secured combination box had been removed. Plaintiff then found that the back door of the home was cracked open, and that upon entering he observed loose wire hanging from electrical boxes and that some *Page 4 
copper piping had been cut-out and removed. On the second floor of the home, plaintiff encountered a young man wearing black jeans and a hooded sweatshirt. Plaintiff testified that he told the intruder that the police were on their way and that when he did so, the young man attempted to escape by maneuvering past plaintiff in the hallway. Plaintiff testified that as the intruder approached him, he grabbed the intruder's sweatshirt with this left hand in an attempt to detain him. According to plaintiff, the intruder then jerked twice in an attempt to free himself, but plaintiff was able to maintain his grip. However, when the intruder jerked a third time, he was able to pull free from plaintiff and fled from the home.
5. Plaintiff testified that after the intruder fled, he immediately telephoned Mr. Mark Hedrick, the Town of Zebulon's Planning Director. During this conversation, Mr. Hedrick informed plaintiff that he would notify the police. When the police arrived at the scene, plaintiff informed an officer of what had occurred with the intruder. Plaintiff testified that he then telephoned Mr. Tim Gull, his supervisor and the chief building inspector for the northeastern section of Wake County, and informed him as well of what had occurred.
6. According to plaintiff, due to being in shock following the incident, he did not initially realize he had been injured, noticing only that he was sore immediately thereafter. Plaintiff asserts that it was because of this that he did not inform Mr. Gull or the Zebulon Police Officer that he had been injured as a result of the incident at issue.
7. Sergeant Devon M. Howard has been a police officer with the Town of Zebulon for approximately ten (10) years. At the hearing, Sergeant Howard testified that he was called to investigate the incident in which plaintiff grabbed or attempted to grab a young male intruder wearing a hooded sweatshirt and black jeans as he tried to flee the home. There is no reference in Sergeant Howard's report about plaintiff reporting being injured as a result of this incident. *Page 5 
8. Regarding his physical condition, plaintiff testified that within a few days after July 9, 2009, he began to experience increased pain in his left-arm/shoulder and neck. According to plaintiff, his pain was intermittent at first, but began to increase over time.
9. Plaintiff first sought medical condition for his symptoms on August 10, 2009, from his primary care physician at Carolina Express Care in Knightdale. At that facility, plaintiff reported having experienced severe, intermittent pain for approximately one month. This coincides with the date of the incident at issue. There is, however, no reference in the records from that date where plaintiff attributes his complaints to the workplace incident of July 9, 2009.
10. A cervical MRI was taken on August 12, 2009, which revealed a mild broad based left paracentral posterior lateral disc extending into the central canal with resulting moderate left sided central canal stenosis which was causing a moderate degree of left-sided spinal cord compression.
11. On August 27, 2009, plaintiff sought treatment from Dr. Melissa Roccos, a chiropractor, and reported that his left-arm/shoulder and neck pain began six weeks prior, which would coincide with the date of the incident at issue. There is, however, no specific reference in the records from that date to the workplace incident of July 9, 2009. Furthermore, in regards to the origin of plaintiff's pain complaints, the record states plaintiff "cannot recall how it started."
12. When asked for the reason he did not inform his primary care physician or Dr. Roccos how he was injured, plaintiff testified that it was his initial understanding he only had thirty (30) days to file a workers' compensation claim and that after that period elapsed, it was too late to file a claim. Plaintiff further testified that it also was his understanding that if he had informed his physicians in August 2009 that his symptoms were related to a workplace incident, he would have been unable file the treatment with his health insurance provider. *Page 6 
13. Based upon the totality of the evidence of record, the Full Commission finds that plaintiff's testimony regarding the circumstances of his July 9, 2009 encounter with the home intruder to be credible.
14. The circumstances of the July 9, 2009 intruder related incident in which plaintiff was involved constituted an interruption of plaintiff's regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
15. Although defendant knew of the July 9, 2009 incident, an issue has been raised pursuant to N.C. Gen. Stat. § 97-22 regarding the timeliness of plaintiff's claim of having sustained injuries to his left-arm/shoulder and neck as a result of this incident.
16. Pursuant to N.C. Gen. Stat. § 97-22 and the North Carolina Supreme Court's holding in Gregory v. W. A. Brown Sons,363 N.C. 750, 688 S.E.2d 431 (2010), an injured employee is required to provide to their employer immediate, or as soon as practicable thereafter, written notice of their claim of a work-place accident. Further, an injured employee is entitled to receive no compensation if written notice is not provided within thirty (30) days of the accident, unless there is a reasonable excuse for the delay by plaintiff and a finding that defendant was not prejudiced by the delay in notice.
17. In this matter, plaintiff did not file an Industrial Commission Form 18 providing written notice of his July 9, 2009 claim of a work-related injury until December 22, 2009. Plaintiff testified that he failed to comply with N.C. Gen. Stat. § 97-22 due to his belief that his condition was not serious and that his pain would subside.
18. Mr. Gull testified that he recalled plaintiff reporting the July 9, 2009 incident involving an intruder and plaintiff's attempt to detain him by grabbing the intruder's sweatshirt. *Page 7 
However, Mr. Gull was unable to recall when he first learned of plaintiff's claim that as a result of that incident, he injured his left-arm/shoulder and neck
19. Because defendant had actual notice of the July 9, 2009 incident, and because of plaintiff's belief that his pain would subside, the Full Commission finds that plaintiff's failure to comply with N.C. Gen. Stat. § 97-22 is reasonably excused. Additionally, given that defendant had actual knowledge of the specific circumstances of the July 9, 2009 incident involving an intruder and plaintiff's attempt to detain him by grabbing the intruder's sweatshirt, and because plaintiff sought medical treatment on August 10, 2009, a little over one month from the date of the incident, the Full Commission finds defendant was not prejudiced by the delay in having written notice of plaintiff's accident pursuant to N.C. Gen. Stat. § 97-22.
20. Accordingly, plaintiff's claim for a left-arm/shoulder and neck injury is not barred by the provisions of N.C. Gen. Stat. § 97-22.
21. Plaintiff's primary care physician referred him to Dr. Russell Margraf, a neurosurgeon. Dr. Margraf first examined plaintiff on August 31, 2009. Plaintiff testified that on that date, he reported having an approximate two-month history of upper extremity pain, numbness, and weakness, and that his symptoms had worsened over time. However, Dr. Margraf's records reflect that plaintiff also reported that his upper extremity symptoms were bilateral in nature and had begun in his right-arm, and later migrated into his left-arm. Furthermore, Dr. Margraf's records do not have indication of plaintiff attributing his complaints to the incident of July 9, 2009.
22. At the hearing, plaintiff denied informing Dr. Margraf on August 31, 2009, that his pain began in his right-arm and then moved into his left-arm. According to plaintiff, that reference in Dr. Margraf's records was erroneous. *Page 8 
23. Following an examination and review of plaintiff's cervical MRIs, Dr. Margraf recommended a two-level cervical decompression and fusion procedure. Additionally, on September 5, 2009, Dr. Margraf medically excused plaintiff from work. Since that date, plaintiff has not returned to work in any capacity.
24. On September 8, 2009, Dr. Margraf performed the surgery he previously had recommended. Thereafter, the pain which had been radiating into plaintiff's left-arm improved, but he continued to experience severe pain in his left-shoulder.
25. Dr. Margraf was unable to testify that it was more likely than not that the incident on July 9, 2009, caused plaintiff's cervical injury or necessitated his cervical surgery.
26. Thereafter, Dr. Margraf referred plaintiff to Dr. Hardy Singh, an orthopedic surgeon, for an evaluation of plaintiff's left-shoulder pain. Dr. Singh first examined plaintiff on November 4, 2009, and diagnosed plaintiff as having a left rotator cuff tendon tear and joint arthritis. Plaintiff then underwent surgery, performed by Dr. Singh on November 12, 2009, with the procedure consisting of a left arm/shoulder diagnostic and operative arthroscopy, limited joint debridement, subacromial decompression including release of coracoacromial ligament and anterolateral acromionectomy, distal clavicle excision or Mumford procedure, and arthroscopic rotator cuff tendon repair.
27. On November 22, 2009, when plaintiff returned to Dr. Singh for post-operative care, plaintiff made reference, for the first time, to the July 9, 2009 incident. At this appointment, plaintiff requested that Dr. Singh document in his medical records that plaintiff was at work when his left-arm/shoulder pain began following an altercation on July 9, 2009. *Page 9 
28. Regarding the timing of his first reference to the July 9, 2009 incident as the cause of his symptoms, plaintiff testified that he informed Dr. Singh about the incident only after learning he actually had two years to file a workers' compensation claim.
29. Eventually Dr. Singh diagnosed plaintiff as having a frozen left arm/shoulder. For this condition, plaintiff underwent surgery on May 6, 2010, which was performed by Dr. Singh.
30. During his deposition, Dr. Singh expressed some surprise regarding references in past medical records in which plaintiff did not relate the cause of his left-shoulder pain to the July 9, 2009 incident. Dr. Singh testified that although ninety to ninety-four percent (90%-94%) of patients who tear a rotator cuff in a traumatic event experience immediate pain, five to ten percent (5%-10%) may not experienced pain until a week later.
31. Dr. Singh opined that plaintiff's left rotator cuff tear was caused by his July 9, 2009 injury by accident. Dr. Singh further testified that the bone spurs more likely than not pre-existed the incident of July 9, 2009, but were made symptomatic by that incident. However, during cross examination by defendant's counsel, Dr. Singh stated that plaintiff's history seems very inconsistent, and further testified that those inconsistencies would affect his opinion on causation.
32. Based upon the credible medical evidence of record, the Full Commission finds that plaintiff's cervical symptoms and resulting surgery were not the direct and proximate result of or causally related to his July 9, 2009 injury by accident.
33. Based upon the credible medical evidence of record, the Full Commission finds that plaintiff's left-sided rotator cuff tendon tear, acromioclavicular joint arthritis, labrum tear, and frozen arm/shoulder were not the direct and natural result of or causally related to his July 9, 2009 injury by accident. *Page 10 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Full Commission concludes that this matter is controlled by the Supreme Court's holding in Gregory v. W. A.Brown Sons, 363 N.C. 750, 688 S.E.2d 431 (2010). Because defendant had actual notice of the July 9, 2009 incident, and because of his belief that his pain would subside, the Full Commission concludes that plaintiff's failure to comply with N.C. Gen. Stat. § 97-22 is reasonably excused. N.C. Gen. Stat. § 97-22; Gregory v. W. A. Brown Sons,363 NC 750, 688 S.E.2d 431 (2010). Additionally, given that defendant had actual knowledge of the specific circumstances of the July 9, 2009 incident involving an intruder and plaintiff's attempt to detain him by grabbing the intruder's sweatshirt, and because plaintiff sought medical treatment on August 10, 2009, a little over one month from the date of the incident, the Full Commission finds defendant was not prejudiced by the delay in having written notice of plaintiff's accident pursuant to N.C. Gen. Stat. § 97-22. Id.
2. Accordingly, plaintiff's claim for a left-arm/shoulder and neck injury is not barred by the provisions of N.C. Gen. Stat. § 97-22.
3. In a workers' compensation claim, the employee has the burden of proving that his claim is compensable. Henry v. A.C. LawrenceLeather Co., 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). Plaintiff bears the burden of proving each and every element of compensability, including causation. Whitfield v. Laboratory Corp.of America, 158 N.C. App. 341, 581 S.E.2d 778 (2003). *Page 11 
4. There is insufficient evidence of record upon which to conclude that plaintiff's cervical symptoms, left-sided rotator cuff tendon tear, acromioclavicular joint arthritis, labrum tear, or frozen arm/shoulder were the direct and proximate result of or causally related to his July 9, 2009 injury by accident. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980). To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley v. ACTS, Inc.,357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). The medical evidence in this case does not establish a causal connection between plaintiff's cervical symptoms, left-sided rotator cuff tendon tear, acromioclavicular joint arthritis, labrum tear, and frozen arm/shoulder, and the July 9, 2009 incident. Therefore, plaintiff has failed to prove by the greater weight of the competent evidence that the incident on July 9, 2009, caused or aggravated his cervical or left-sided shoulder symptoms and conditions. Accordingly, plaintiff's claim must be denied. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 ORDER
1. Under the law, plaintiff's claim must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This the 27th day of July, 2011. *Page 12 
 S/__________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/__________________ STACI T. MEYER COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
S/__________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1