***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Homick and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The employer-employee relationship existed between plaintiff and defendant-employer at all relevant times in this proceeding.
4. American Interstate Insurance was the workers' compensation carrier on the risk at all relevant times in this proceeding.
5. Plaintiff's average weekly wage at the time of the alleged injury was $1,495.00, which yields the maximum compensation rate for 2010 of $835.00 per week.
6. Plaintiff alleges a specific traumatic incident on February 2, 2010, and defendants have denied compensability.
7. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Plaintiff's Medical Records, Correspondence, Medical Bills, Personnel Records, Industrial Commission Forms, Discovery Responses, Court Calendar, Payroll Records, Plaintiff's Bank Statements and Pre-Trial Agreement; and
 • Exhibit 2: Plaintiff's Recorded Statement (Submitted post-hearing on CD).
8. Plaintiff's issues for determination by the North Carolina Industrial Commission are as follows:
 a. Whether plaintiff sustained an injury by accident arising out of and in the course and scope of employment, and if so, whether plaintiff is entitled to any workers' compensation benefits. *Page 3 
 b. Whether either party is entitled to attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the preponderance of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. Plaintiff obtained a high school equivalency certificate by passing the General Educational Development Test ("GED"). Plaintiff received vocational education in the field of cable connectivity.
2. Plaintiff was employed as a communications specialist for defendant-employer. His duties included changing antennas on communication towers as well as other cable installation and repair duties. Changing antennas requires climbing approximately 300 feet up the communication tower while wearing a harness that weighs between 30 to 40 pounds.
3. In approximately 1997, plaintiff had a rock climbing accident, but denied injuring his back.
4. On February 2, 2010, sometime between 1:00 and 3:00 a.m., plaintiff stated that he experienced a "pop" in his back while replacing an antenna on a high communication tower. Plaintiff estimated that the antenna weighed approximately 45 pounds.
5. Plaintiff testified that when he climbed down the tower and entered the truck, where his supervisor Mark Andrew Baker was located, he explained that he was injured while replacing the antenna. Mark Baker contradicted plaintiff's testimony and denied that plaintiff informed him about injuring his back on the communications tower that evening. Mark Baker *Page 4 
testified that the first time plaintiff reported injuring his back on February 2, 2010, was on March 19, 2010, over 30 days after the alleged incident.
6. Plaintiff's co-worker, James Wesley ("Wes") Anderson worked with plaintiff in the early morning of February 2, 2010, but was unable to see if anything unusual occurred while plaintiff was working on the tower. Wes Anderson stated that he pulled the antennas from the ground to the top and held the weight while plaintiff replaced the antennas. Wes Anderson testified that he did not recall plaintiff saying anything about an injury when plaintiff returned to the truck that day. Wes Anderson stated that sometime between February 2, 2010, and March 12, 2010, plaintiff first informed him that his back was hurting, but plaintiff did not describe a work injury.
7. The Chief Executive Officer of defendant-employer, James Nisley, testified that plaintiff first informed him on March 19, 2010, that he was experiencing back problems. James Nisley stated that the following day, on March 20, 2010, when he asked plaintiff if he had been injured while performing his work duties, plaintiff denied a work injury.
8. George Maillet, the Chief Financial Officer for defendant-employer, testified that it was on March 20, 2010, he first learned that plaintiff was claiming he injured himself on February 2, 2010.
9. Plaintiff was able to continue working for defendant-employer after February 2, 2010, and the work crew went to Wilmington, North Carolina and then on to Richmond, Virginia. In Richmond, plaintiff requested that he not be required to climb the towers, but admitted that he did not tell his crew leader, Mark Baker, the reason was due to his back pain.
10. In March 2010, plaintiff sustained an unrelated wrist injury for which he missed several days of work. Plaintiff informed Mark Baker and Wes Anderson of his wrist injury and *Page 5 
Mark Baker stated that he believed the reason plaintiff requested that he not be required to climb towers was because of his wrist injury.
11. At the hearing, plaintiff alleged an additional aggravation to his back while he was working in Richmond, Virginia when he lifted a heavy box at work. James Nisley, Mark Baker, and George Maillet, testified that plaintiff never reported this new injury, and the hearing before the Deputy Commissioner was the first time that they were made aware of it. Plaintiff admitted that he did not report this incident to his employer as he thought it was common knowledge that he already had a back injury.
12. On March 12, 2010, plaintiff presented to the Emergency Room at Henrico Doctors' Hospital in Richmond, Virginia with complaints of low back/buttock pain radiating to his left thigh that commenced approximately two weeks earlier. The medical record indicates that plaintiff experienced a similar incident approximately 10 years earlier.
13. On the hospital's admission forms, plaintiff indicated that he was "unemployed," although plaintiff was still employed with defendant-employer. Plaintiff also denied any injury. The hospital records noted that plaintiff was "ambulatory without difficulty" and had a steady gait. Plaintiff was advised to return if his symptoms worsened.
14. James Nisley stated that on March 19, 2010, plaintiff called him and reported that he was having back problems from an old accident that would occasionally flare-up and that his doctor in Tennessee agreed to treat him. Plaintiff asked Mr. Nisley to meet him at the car rental at the Charlotte airport and drive him to his personal vehicle. Plaintiff intended to drive to Tennessee for treatment with his family doctor. *Page 6 
15. James Nisley stated that when he met plaintiff on March 20, 2010, plaintiff again indicated that his back pain was not work-related and waxed and waned due to the physical nature of the work that he performed for defendant-employer.
16. On March 29, 2010, plaintiff called Mr. Nisley again and explained that he had financial limitations, and requested that his back condition be handled through the workers' compensation insurance of defendant-employer. James Nisley told plaintiff that he had a responsibility to disclose to the insurance company that plaintiff had repeatedly denied that his back condition was work-related.
17. On March 31, 2010, plaintiff present to Sycamore Shoals Hospital in Elizabethton, Tennessee with complaints of low back pain for approximately one and one-half months after twisting on a tower at work. The records later indicate plaintiff injured himself twisting to lift a heavy item. The records from this visit indicate that plaintiff reported a gradual onset of symptoms and that his symptoms were continuous in nature. Plaintiff was diagnosed with a paraspinous muscle strain and was released with light duty restrictions.
18. On April 14, 2010, plaintiff presented to Northside Hospital in Johnson City, Tennessee with complaints of lumbar pain that radiated into his left leg. The records indicate that at this presentation plaintiff indicated a sudden onset of symptoms, continuous in nature, starting two months prior. Plaintiff now reported that the accident was work-related. Plaintiff was diagnosed with an exacerbation of chronic low back pain and released to return to work.
19. On April 23, 2010, plaintiff presented to Dr. Marilyn A. Bishop, an occupational medicine specialist, with complaints of continued low back pain. For the first time, plaintiff reported he experienced a "pop" in his back on February 2, 2010. Dr. Bishop ordered an x-ray, *Page 7 
which revealed evidence of lumbar disc disorder with myelopathy. Dr. Bishop released plaintiff to return to light duty with no lifting over 15 pounds and recommended an MRI.
20. On May 20, 2010, plaintiff again presented to Dr. Bishop with basically the same symptoms of continued back discomfort and radiculopathy. As there was no change in the objective findings, Dr. Bishop maintained plaintiff's work restrictions, but did not release plaintiff from work.
21. On June 23, 2010, plaintiff's last visit with Dr. Bishop, she reviewed the results of plaintiff's MRI, which revealed an L5-S1 disk extrusion. Dr. Bishop explained that this finding was "basically a pinched nerve". Dr. Bishop released plaintiff to return to work on restricted duty and recommended a referral to a neurosurgeon to determine whether it was reasonable to continue conservative treatment or if surgical treatment would be necessary.
22. On the issue of causation, Dr. Bishop testified that the description of the mechanism of injury as plaintiff presented it to her was consistent with an acute injury. However, Dr. Bishop admitted that she had to rely on plaintiff's subjective description of how the injury occurred when she formulated her opinion.
23. Dr. Bishop confirmed that plaintiff did not report a prior wrist injury, or prior symptoms in his lower back, including chronic back pain as listed in the prior medical records. Plaintiff also failed to mention that he had lifted a heavy box in Richmond, Virginia that caused a flare up of back pain, in fact, Dr. Bishop recounts that plaintiff specifically told her, "that it worsened with standing and walking." Dr. Bishop further testified that plaintiff made no mention of squatting when plaintiff felt the "pop" in his back
24. As of the date of the hearing, plaintiff remained employed with defendant-employer but has not returned to work. *Page 8 
25. The Full Commission finds that there are multiple inconsistencies in plaintiff's testimony and medical records. The Full Commission further finds that plaintiff failed to give truthful answers to his caregivers when he presented to the Emergency Room at Henrico Doctors' Hospital in Richmond, Virginia on March 12, 2010.
26. Based upon the preponderance of the evidence of record, the Full Commission finds that there were inconsistencies in the testimony and insufficient credible evidence of record upon which to conclude that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident or accident on February 2, 2010.
27. Neither party has pursued this claim without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. It may accept or reject the testimony of a witness, in whole or part, depending solely upon whether it believes or disbelieves the same.See N.C. Gen. Stat. § 97-84; Smith v. William MuirheadConstr. Co., 27 N.C. App. 286, 291, 218 S.E.2d 717, 720 (1975). The Full Commission concludes plaintiff's versions of the alleged accidents or specific traumatic events are not credible based upon the preponderance of the evidence, including plaintiff's hearing testimony and plaintiff's medical records.
2. In a workers' compensation case, plaintiff has the burden of proving compensability. As part of this burden, plaintiff must present convincing evidence establishing the *Page 9 
elements of compensability. Whitfield v. Lab Corp. of Amer.,158 N.C. App. 341, 581 S.E.2d 778 (2003); Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 683, 195 S.E.2d 141, 143, cert. denied283 N.C. 585, 197 S.E.2d 873 (1973).
3. "Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury."Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
4. Based on the inconsistencies in plaintiff's testimony and the lack of credible evidence produced by plaintiff, plaintiff has not presented sufficient evidence to take the case out of the realm of conjecture or possibility, and has failed to carry his burden of proving he sustained a compensable injury by accident or specific traumatic incident in the course and scope of his employment on February 2, 2010. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980). To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley v. ACTS, Inc., supra.
5. In oral argument before the Full Commission and in his appellant brief, plaintiff argued that he was a traveling employee of defendant-employer and was continuously acting within the course and scope of his employment while traveling for defendant-employer and therefore "only had to show that some accident or specific traumatic event occurred sometime between January 3, 2010 and March 12, 2010." Plaintiff cites the case of Hobgood v. Anchor Motor Freight,68 N.C. App. 783, 316 S.E.2d 86 (1984) in support of this position. Plaintiff's *Page 10 
argument is without merit and the Full Commission concludes, based on the inconsistencies in the testimony and plaintiff's lack of credibility, that plaintiff has failed to show that an accident or specific traumatic incident occurred in the time period as alleged.Smith v. William Muirhead Constr. Co., supra.
6. As neither party pursued this matter in an unreasonable manner or without reasonable grounds, neither party is entitled to attorney's fees as a sanction. N.C. Gen. Stat. § 97-88.1;Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Under the law, plaintiff's claim must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This the 20th day of September, 2011.
 S/_____________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________________ STACI T. MEYER COMMISSIONER *Page 11 
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1